## STUBBLEFIELD v. UNITED STATES.
### No. 42038.

Court of Claims.
April 2, 1934.

444

Frederick Schwertner, of Washington, D. C., for plaintiff.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (Elizabeth B. Davis, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff in this case is the executrix of the estate of her deceased husband, Thomas W. Stubblefield. The suit is for the recovery of an estate tax alleged to have been illegally assessed and collected by the Commissioner of Internal Revenue under the following provisions of the Revenue Act of 1924 (43 Stat. 253, 304, 26 USCA § 1094 note):

. "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to

the contrary, be deemed to have been made in contemplation of death within the meaning of Part I of this chapter."

The facts of record determine the issue. The case of United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867, is the applicable precedent. Plaintiff in filing an estate-tax return with the collector omitted from the same the value of certain parcels of real estate and the sum of $69,085.95 in money admittedly received by her within two years of the death of the testator. The Commissioner in an audit and review of the return determined an increase in the value of the gross estate, and after the allowance of certain deductions assessed and collected a deficiency tax of $5,426.54, which with interest amounted to $6,025.23. This amount the plaintiff paid under protest, later filed a timely claim for refund, and this suit is for the recovery of a judgment for the tax so paid.

The Commissioner justified his action under the theory that the transfer of the real property, as well as the money paid to the plaintiff, had been and was made by the testator in contemplation of death.

All the transfers occurred within two years prior to the testator's death. The realty deeded embraced several properties determined by the Commissioner to be of the net value of $328,000. The testator had been in poor health for several years prior to the execution of the deeds, and his physical condition was precarious. The attending physician had warned him repeatedly as to the necessity of observing rigid rules of diet, rest, and inactivity if he wished to escape the consequences of serious organic ailments.

On December 25, 1923, the testator suffered a collapse while walking on the street toward his home, and had to be assisted thereto. The doctor was immediately called, and the diagnosis of his condition disclosed an unsound heart, due to a development of previous organic trouble of a serious nature. His serious illness continued for many days, and it was during this period that the testator executed to the plaintiff the deeds for the realty involved.

We need not recite in detail all that occurred; it is sufficient to state that it is impossible, in view of the record, to reconcile the transaction upon any other basis than that the "controlling motive" for the transfer of the property was contemplation of death. Not only were deeds drawn up for the transfer of the most valuable of the testator's realty possessions, but a will was executed disposing of the remainder of his estate, and notwithstanding this will was superseded by a later one, all the facts and circumstances indicate positively that the existing serious illness of the testator moved him to comply with the wishes of the plaintiff, which she had persistently theretofore urged him to do before it was too late, and this he did, despite the protests of his business partner, and contrary to his attitude with respect to the subject when he deemed himself a well man. The first deed was executed on January 10, 1924, fifteen days after the serious attack of December 25, 1923. This deed embraced all the properties transferred; it was not recorded, for later separate deeds were executed for individual properties and recorded. At no time following this transaction was the testator well, or ever able to give to his affairs the time and attention previously accorded them, and on August 19, 1925, he died suddenly while at Ventnor, N. J., for the summer. That he knew and appreciated his physical condition and remained in constant dread of the very fate which terminated his career is proven beyond a doubt. He was an intelligent man, active and alert when in health, knew precisely what he was doing and the reasons for doing it, and had he not contemplated the imminence of death he probably would have continued to refrain from doing the very thing that was done, and which he had refused to do despite the wishes of the plaintiff, until this sudden illness warned him to immediately adjust his affairs.

The testator owned in his own name the Dresden Apartment House in Washington. In March, 1925, he was in a position to conclude a sale of the same for approximately $200,000 in cash, and he was anxious to sell and realize the money. The plaintiff, his wife, had for a long time been much disturbed over her husband's realty speculations, and possessed an acute antipathy for his business partner. She was anxious to secure adequate financial protection for herself and daughter in the event of her husband's demise. In 1924, a short time after the deeds to the property heretofore mentioned had been executed, she consulted a lawyer and placed before him the financial status of herself and her husband. She was advised that she had acted wisely in procuring deeds to certain properties, and under no circumstances to allow the property deeded to her "to get out of her name." So, when the transaction involving the sale of the Dresden Apartment arose, acting upon the advice of her lawyer she positively declined to join

her husband in executing a deed for the same, unless she received part of the cash consideration. Obviously, the sale could not be effected without release of her inchoate right of dower. The testator yielded to the demand, and to the plaintiff he gave a cashier's check at the time and in the bank where the money was paid to him, for $80,000, the plaintiff agreeing that out of said sum she would discharge an indebtedness of the testator of $10,914.05.

The defendant insists that this transaction constituted a transfer in contemplation of death, i. e., the testator received the entire consideration of $200,000, and after receiving the same made a transfer of $80,000 of the same to the plaintiff. The plaintiff insists that it was "a bona fide sale for a fair consideration in money" of her inchoate right of dower in the realty. The defendant concedes that the plaintiff was under no obligation to sell her dower right in the property, and that the following citations of authority that a transfer of this kind is excepted from taxation under the quoted sections of the Revenue Act of 1924 are apposite, viz.: Reilly v. Cullinane, 53 App. D. C. 17, 287 F. 994; Ferguson, Collector, v. Dickson et al. (C. C. A.) 300 F. 961; Id., 266 U. S. 628, 45 S. Ct. 126, 69 L. Ed. 476; and McCaughn v. Carver (C. C. A.) 19 F.(2d) 126.

The issue, then, as we see it, resolves itself into one of fact.

The findings correctly disclose that the plaintiff was decidedly adverse to her husband's extensive speculation in real estate. She was aware that his financial situation was not conducive to her welfare in the event anything happened to him. His equities in real property, together with his financial obligations incurred in guaranteeing notes and borrowing money, of which she had knowledge, justified her apprehension that he was involved greatly beyond his resources to meet a sudden emergency either as to market conditions or health, and she continuously exercised all the influence and means available to her to provide for herself and child.

The lawyer with whom she advised counseled her with respect to her marital rights in the Dresden Apartment and told her not to sign the deed unless she received a part of the cash consideration to be paid. Plaintiff accompanied her husband to the bank and received in person the check for the $80,000 at the very moment the money was paid to him, an unusual procedure, and we believe the record warrants the inference that the sum received was paid to her in order to secure a release of her inchoate right of dower and enable the sale of the property to be completed.

While the record is silent as to whether the testator parted with the payment involuntarily, yet the fact that prior to this transaction the plaintiff had willingly joined in deeds of conveyance, regardless of her marital rights without participation in the monies exchanged, indicates that in this instance in accord with legal advice she was unwilling to part with her lawful rights without consideration.

A wholly disinterested witness, in no way involved in the acute disputation which the record exhibits, and without the slightest interest in the controversy, testifies from his own knowledge that the money paid to the plaintiff was paid in lieu of her dower right in the property.

That the plaintiff was in a position to *exact* a portion of the purchase price of the property on a basis of her marital rights therein is of course clear, as is the fact that a mutual agreement existed as to the amount and the manner of payment, characterizing the transaction, we think, as a transfer for a consideration rather than a gift. One with an inchoate dower right to realty who declines to part therewith without the payment of a fair and adequate consideration therefor can hardly be said to have transferred it upon any other basis.

Judgment in the case will be suspended awaiting a new computation of the tax to be filed by the parties in accord with this opinion. It is so ordered.