## MERRILL *v.* FAHS, COLLECTOR OF INTERNAL REVENUE.

No. 126. Argued January 9, 1945.—Decided March 5, 1945.

*Messrs. Sam R. Marks* and *Harry T. Gray,* with whom *Mr. Francis M. Holt* was on the brief, for petitioner.

*Miss Helen R. Carloss,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key* and *I. Henry Kutz* were on the brief, for respondent.

Mr. Justice Frankfurter delivered the opinion of the Court.

This is a companion case to *Commissioner* v. *Wemyss, ante,* p. 303.

On March 7, 1939, taxpayer, the petitioner, made an antenuptial agreement with Kinta Desmare. Taxpayer, a resident of Florida, had been twice married and had three children and two grandchildren. He was a man of large resources, with cash and securities worth more than $5,000,000, and Florida real estate valued at $135,000. Miss Desmare's assets were negligible. By the arrangement entered into the day before their marriage, taxpayer agreed to set up within ninety days after marriage an irrevocable trust for $300,000, the provisions of which were to conform to Miss Desmare's wishes. The taxpayer was also to provide in his will for two additional trusts, one, likewise in the amount of $300,000, to contain the same limitations as the *inter vivos* trust, and the other, also in the amount of $300,000, for the benefit of their surviving children. In return Miss Desmare released all rights that she might acquire as wife or widow in taxpayer's property, both real and personal, excepting the right to maintenance and support. The inducements for this agreement were stated to be the contemplated marriage, desire to make fair requital for the release of marital rights, freedom for the taxpayer to make appropriate provisions for his children and other dependents, the uncertainty surrounding his financial future and marital tranquillity. That such an antenuptial agreement is enforceable in Florida is not disputed, *North* v. *Ringling,* 149 Fla. 739, 7 So. 2d 476, nor that Florida gives a wife an inchoate interest in all the husband's property, contingent during his life but absolute upon death. Florida Statutes (1941) § 731.34; *Smith* v. *Hines,* 10 Fla. 258; *Henderson* v. *Usher,* 125 Fla. 709, 170 So. 846. The parties married, and the agreement was fully carried out.

310

On their gift tax return for 1939, both reported the creation of the trust but claimed that no tax was due. The Commissioner, however, determined a deficiency of $99,-000 in taxpayer's return in relation to the transfer of the $300,000. Upon the Commissioner's rejection of the taxpayer's claim for refund of the assessment paid by him, the present suit against the Collector was filed. The District Court sustained the taxpayer, 51 F. Supp. 120, but was reversed by the Circuit Court of Appeals for the Fifth Circuit, one judge dissenting. 142 F. 2d 651. We granted certiorari in connection with *Commissioner* v. *Wemyss, supra,* and heard the two cases together. 323 U. S. 686.

This case, unlike the *Wemyss* case, does not come here by way of the Tax Court. No aid can therefore be drawn from a prior determination by the tribunal specially entrusted with tax adjudications. (See Griswold, The Need for a Court of Tax Appeals (1944) 57 Harv. L. Rev. 1153, 1173.) But like the *Wemyss* case, this case turns on the proper application of § 503 of the Revenue Act of 1932, 47 Stat. 169, 247, 26 U. S. C. § 1002. In the interest of clarity we reprint it here: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year." Taxpayer claims that Miss Desmare's relinquishment of her marital rights constituted "adequate and full consideration in money or money's worth." The Collector, relying on the construction of a like phrase in the estate tax, contends that release of marital rights does not furnish such "adequate and full consideration."

We put to one side the argument that in any event Miss Desmare's contingent interest in her husband's property had too many variables to be reducible to dollars and

cents, and that any attempt to translate it into "money's worth" was "mere speculation bearing the delusive appearance of accuracy." *Humes* v. *United States,* 276 U. S. 487, 494. We shall go at once to the main issue.

The guiding light is what was said in *Estate of Sanford* v. *Commissioner,* 308 U. S. 39, 44: "The gift tax was supplementary to the estate tax. The two are in *pari materia* and must be construed together." The phrase on the meaning of which decision must largely turn—that is, transfers for other than "an adequate and full consideration in money or money's worth"—came into the gift tax by way of estate tax provisions. It first appeared in the Revenue Act of 1926. Section 303 (a) (1) of that Act, 44 Stat. 9, 72, allowed deductions from the value of the gross estate of claims against the estate to the extent that they were *bona fide* and incurred "for an adequate and full consideration in money or money's worth." It is important to note that the language of previous Acts which made the test "fair consideration" was thus changed after courts had given "fair consideration" an expansive construction.

The first modern estate tax law had included in the gross estate transfers in contemplation of, or intended to take effect in possession or enjoyment at, death, except "a bona fide sale for a fair consideration in money or money's worth." § 202 (b), Revenue Act of 1916, 39 Stat. 756, 777. Dower rights and other marital property rights were intended to be included in the gross estate, since they were considered merely an expectation, and in 1918 Congress specifically included them. § 402 (b), 40 Stat. 1057, 1097. This provision was for the purpose of clarifying the existing law. H. Rep. No. 767, 65th Cong., 2d Sess., p. 21. In 1924 Congress limited deductible claims against an estate to those supported by "a fair consideration in money or money's worth," § 303 (a) (1), 43 Stat. 253, 305, employing the same standard applied to transfers in con-

templation of death, H. Rep. No. 179, 68th Cong., 1st Sess., pp. 28, 66. Similar language was used in the gift tax, first imposed by the 1924 Act, by providing, "Where property is sold or exchanged for less than a fair consideration in money or money's worth" the excess shall be deemed a gift. § 320, 43 Stat. 253, 314.

The two types of tax thus followed a similar course, like problems and purposes being expressed in like language. In this situation, courts held that "fair consideration" included relinquishment of dower rights. *Ferguson* v. *Dickson*, 300 F. 961; and see *McCaughn* v. *Carver*, 19 F. 2d 126; *Stubblefield* v. *United States*, 6 F. Supp. 440. Congress was thus led, as we have indicated, to substitute in the 1926 Revenue Act, the words "adequate and full consideration" in order to narrow the scope of tax exemptions. See *Taft* v. *Commissioner*, 304 U. S. 351, 356. When the gift tax was re-enacted in the 1932 Revenue Act, the restrictive phrase "adequate and full consideration" as found in the estate tax was taken over by the draftsman.

To be sure, in the 1932 Act Congress specifically provided that relinquishment of marital rights for purposes of the estate tax shall not constitute "consideration in money or money's worth." The Committees of Congress reported that if the value of relinquished marital interests "may, in whole or in part, constitute a consideration for an otherwise taxable transfer (as has been held to be so), or an otherwise unallowable deduction from the gross estate, the effect produced amounts to a subversion of the legislative intent . . ." H. Rep. No. 708, 72d Cong., 1st Sess., p. 47; S. Rep. No. 665, 72d Cong., 1st Sess., p. 50. Plainly, the explicitness was one of cautious redundancy to prevent "subversion of the legislative intent." Without this specific provision, Congress undoubtedly intended the requirement of "adequate and full consideration" to exclude relinquishment of dower and other marital rights

with respect to the estate tax. *Commissioner* v. *Bristol,* 121 F. 2d 129; *Sheets* v. *Commissioner,* 95 F. 2d 727.

We believe that there is every reason for giving the same words in the gift tax the same reading. Correlation of the gift tax and the estate tax still requires legislative intervention. *Commissioner* v. *Prouty,* 115 F. 2d 331, 337; Warren, Correlation of Gift and Estate Taxes (1941) 55 Harv. L. Rev. 1; Griswold, A Plan for the Coordination of the Income, Estate and Gift Tax Provisions (1942) 56 Harv. L. Rev. 337. But to interpret the same phrases in the two taxes concerning the same subject matter in different ways where obvious reasons do not compel divergent treatment is to introduce another and needless complexity into this already irksome situation. Here strong reasons urge identical construction. To hold otherwise would encourage tax avoidance. *Commissioner* v. *Bristol, supra* at 136; 2 Paul, Estate and Gift Taxation (1942) p. 1118. And it would not fulfill the purpose of the gift tax in discouraging family settlements so as to avoid high income surtaxes. H. Rep. No. 708, 72d Cong., 1st Sess., p. 28; S. Rep. No. 665, 72d Cong., 1st Sess., p. 40. There is thus every reason in this case to construe the provisions of both taxes harmoniously. *Estate of Sanford* v. *Commissioner, supra.*[1]

*Affirmed.*

MR. JUSTICE ROBERTS dissents.

MR. JUSTICE REED, dissenting.

This case differs from *Commissioner* v. *Wemyss, ante,* p. 303. Whether the transferor of the sums paid for the release of dower and other marital rights, received ade-

---

[1] Treasury Regulations 79 (1936 ed.) Art. 8 is inapplicable. To find that the transaction was "made in the ordinary course of business" is to attribute to the Treasury a strange use of English.

quate and full consideration in money and money's worth
is a question of fact. The agreement recites that the
parties contemplate marriage and provides that the trust
shall be set up only in the event of and following the mar-
riage. Petitioner was obligated to create the trust upon
consideration of the relinquishment of marital rights and
did so, and hence this is not a case involving marriage
alone as consideration. Through the tables of mortality,
the value of a survivor's right in a fixed sum receivable at
the death of a second party may be adequately calculated.
By adopting present value as the accepted future value,
the uncertainty inherent in fluctuations of an estate's value
is theoretically eliminated. The trial court thus found
the present value of the release of the taxpayer's estate
from the wife's survivorship rights largely exceeded the
amount paid by the taxpayer and that the transactions
between the parties were made in good faith for business
reasons and not an attempt to evade or avoid taxes. Thus
the District Court findings bring this transaction within
the express language of the applicable Treasury Regula-
tion.[1] *Merrill* v. *Fahs,* 51 F. Supp. 120. Its determination,
we think, also makes it clear that the husband's estate

---

[1] Treasury Regulations 79 (1936 ed.):

"Art. 8. *Transfers for a consideration in money or money's worth.*—
Transfers reached by the statute are not confined to those only which,
being without a valuable consideration, accord with the common law
concept of gifts, but embrace as well sales, exchanges, and other dis-
positions of property for a consideration in money or money's worth
to the extent that the value of the property transferred by the donor
exceeds the value of the consideration given therefor. However, a
sale, exchange, or other transfer of property made in the ordinary
course of business (a transaction which is bona fide, at arm's length,
and free from any donative intent), will be considered as made for an
adequate and full consideration in money or money's worth. A con-
sideration not reducible to a money value, as love and affection,
promise of marriage, etc., is to be wholly disregarded, and the entire
value of the property transferred constitutes the amount of the gift."

received practical advantages of value in excess of the cost paid. See *Henderson* v. *Usher*, 125 Fla. 709, 727, 170 So. 846.

The question of the taxability as gifts of transfers to spouses in consideration of the release of marital rights had been a matter of dispute in courts before the passage of the Revenue Act of 1932, § 503, 47 Stat. 169, 247.[2] Congress in the 1932 act, § 804, declared that a transfer of marital rights should not be "consideration in 'money or money's worth'" under the estate tax provisions. Thus Congress put beyond any question the liability of transferors for estate taxes where marital rights were the consideration for the transfer. On the other hand, in the same 1932 Revenue Act the language of the gift tax section, § 503, did not have a provision forbidding the valuation of marital rights. Consequently, § 503 as interpreted by Regulations 79, Art. 8, permits the treatment of the relinquishment of such rights, not donative in intent or effect, as "money's worth" consideration for property transferred. It seems to us clear that with the judicial history of the difficulties in estate and gift taxes as to the transfer of marital rights, when Congress expressly provided that relinquishment of dower, curtesy or other statutory estate was not "consideration" for estate tax purposes and left the gift tax provision without such a limitation, it intended that these rights be accorded a different treatment under these sections. This has been the determination of the Tax Court.[3]

In our view this judgment should be reversed.

The CHIEF JUSTICE and MR. JUSTICE DOUGLAS join in this dissent.

---

[2] *Ferguson* v. *Dickson*, 300 F. 961; *McCaughn* v. *Carver*, 19 F. 2d 126; *Stubblefield* v. *United States*, 79 Ct. Cls. 268, 6 F. Supp. 440.

[3] *Bristol* v. *Commissioner*, 42 B. T. A. 263; *Jones* v. *Commissioner*, 1 T. C. 1207; *Wemyss* v. *Commissioner*, 2 T. C. 876, 881.