Kay Offutt v. Commissioner.
Offutt v. Commissioner
Docket No. 65350.
United States Tax Court
T.C. Memo 1959-27; 1959 Tax Ct. Memo LEXIS 223; 18 T.C.M. (CCH) 128; T.C.M. (RIA) 59027; February 11, 1959
*223 Held: $5,000 annual payments received by petitioner from the Trustees under the will of her deceased husband, pursuant to a prenuptial agreement as modified by a settlement agreement entered into after her husband's death, are taxable income to petitioner to the extent paid out of income of the trust estate. Alice M. Townsend, 12 T.C. 692, affd. 181 Fed. (2d) 502 (C.A. 6). Held: In the absence of evidence showing reasonable cause for petitioner's failure to file a return for 1953, respondent's imposition of the addition to tax under section 291(a) is sustained. Kay Offutt, pro se. Paul E. Waring, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax under section 291(a) of the Internal Revenue Code of 1939 for the years and in the amounts following: Additions to Tax
Year
Deficiencies
Sec. 291(a)
1950
$580.00
$145.00
1951
617.00
154.25
1952
707.00
176.75
1953
817.00
204.25 On brief, respondent concedes that petitioner is not liable for the 25 per cent addition to tax for failure to file timely income tax returns for each of the years 1950 to 1952, inclusive. The issues are: (1) Whether a part of the $5,000 annual payments received by petitioner in each of the years involved from the Trustees under the will of her deceased husband, Daniel E. Offutt, pursuant to a prenuptial agreement, is taxable to her as income; and (2) whether petitioner is liable for the 25 per cent addition to tax for failure to file an income tax return for the year 1953. Respondent asserts that the amounts *225 paid to petitioner, to the extent actually paid out of income of the trust estate, are taxable to petitioner under section 22(b)(3), 1939 Code, as amended by section 111(a) of the Revenue Act of 1942. The sole ground of error alleged by petitioner in her amended petition was that the payments from the trust were from corpus of the estate and therefore not taxable as income to her, relying on Burnet v. Whitehouse, 283 U.S. 148. Her contention at the trial and on brief seems to be that the amounts she received represented a part of the assets she and her husband had saved during their married lives, and, hence, are not income taxable to her; and that the $5,000 she was to receive annually under the prenuptial agreement was intended to be free of tax. None of the facts were stipulated. The evidence consisted of the oral testimony of petitioner, and certain documentary evidence introduced by respondent without which it would have been impossible for the Court to understand and assemble the facts in this case. Findings of Fact Petitioner was unmarried and a resident of Oakland, Maryland, during the years here involved. Petitioner appears to have filed her original individual *226 income tax returns for each of the years 1950, 1951, and 1952 with the director of internal revenue for the district of Maryland, in the latter part of the year 1953, probably in October, although the exact date on which these returns were filed does not appear on the photostatic copies of the returns received in evidence nor elsewhere in the record. She also filed amended returns for the same years on December 31, 1953. Petitioner did not file an income tax return for the year 1953. By instrument dated December 27, 1928, Daniel E. Offutt and Karin Marie Stenholm (petitioner herein), who were then contemplating marriage, entered into a prenuptial agreement. The vital third paragraph of that agreement was in the following language: "The said Daniel E. Offutt, in consideration of the promise of the said Karin Marie Stenholm to marry him, and of the consummation of said promised marriage, and of her agreement herein contained, covenats and agrees that he will, upon his decease, pay, cause to be paid, or provide that there shall be paid to her, if she is then living, the sum of Five Thousand ($5,000.00) Dollars in good and lawful money of the United States, within one year after his *227 decease, and a similar sum of Five Thousand Dollars in each and every year thereafter during the term of her natural life, or until she re-marries, which shall first occur, and if and when the said party hereto of the second part, after the decease of the said party of the first part, remarries, then in that event, and in lieu of said annual payments of said Five Thousand Dollars, the said party of the first part, will provide and cause to be paid to said party of the second part, within one year from the date of said re-marriage, the lump sum of Ten Thousand Dollars, in full of any and all claims or dower rights that the said party of the second part may or might have in the estate of the said party of the first part, as his widow; and she, the said Karin Marie Stenholm, in consideration that said contemplated marriage be consummated, and of the covenants and agreements of the said Daniel E. Offutt herein contained, she, the said Karin Marie Stenholm, covenants and agrees to and with the said Daniel E. Offutt, his executors, administrators and heirs, that she will, upon the death of said Daniel E. Offutt, take and receive said sum of Five Thousand Dollars annually so long as she remains *228 the widow of the said Daniel E. Offutt, in case she re-marries to take and receive in lieu of said Five Thousand Dollar annual-payments, the lump sum of Ten Thousand Dollars, as above set out in full of all rights of dower in or to his estate, and in full of all other rights, claims, or allowances in law or in equity, into or upon his estate, real and personal, which she might or could have, or be entitled to but for this agreement." Daniel E. Offutt and petitioner were married on April 11, 1929. On September 15, 1942, Daniel E. Offutt instituted divorce proceedings against petitioner in the Circuit Court for Garrett County, Maryland. On January 9, 1943, Daniel E. Offutt executed his last will and testament wherein he first mentioned the prenuptial agreement of December 27, 1928, a copy of which was attached to the will, and then stated that the marriage had been consummated and he now wanted to confirm and ratify said agreement. The will made no other provision for Karin and gave all of the residuary estate to Trustees for the purposes of (1) faithfully carrying out the terms and provisions of the agreement between testator's wife and himself; and (2) paying out of income from *229 the estate such sums as may be necessary to properly maintain, educate, support, and further the advancement of his son, Daniel E. Offutt, Jr., until he attained the age of 21, and thereafter paying him out of income a monthly allowance of such amount as the Trustees deemed necessary and desirable for his support and maintenance until he attained age 30. When the son reached ages 30 and 35, the Trustees were authorized to either pay him $25,000 out of corpus or continue the monthly allowances until he became 40. When the son became 40, the Trustees were to pay over the entire balance of the estate to him unless testator's widow was still living unmarried, in which event the Trustees were directed to set aside and invest an amount sufficient to provide the annual allowance due her under the prenuptial agreement until her death or remarriage, after which the amount remaining was to go to the son. On August 20, 1943, Daniel E. Offutt died while the divorce proceeding was pending, leaving surviving his widow, petitioner herein, and his son, Daniel E. Offutt, Jr., who was born August 4, 1931. The value of the net estate left by Offutt was said by the Circuit Court for Garrett County, *230 Maryland, in its opinion hereinafter mentioned, to be about $400,000. Daniel E. Offutt's will was offered for probate in the Orphan's Court for Garrett County, Maryland. Petitioner filed in that court a renunciation of the will and a repudiation of the prenuptial agreement, and an election to take her legal share of the real and personal estate of her husband. Petitioner also filed a Bill of Complaint against the executors and trustees of the estate (who were the same two individuals) seeking to set aside the prenuptial agreement and to have set aside to her the one-third interest in her husband's estate to which a widow is entitled under the law of Maryland. Negotiations toward settlement took place between petitioner and the executors and trustees of the estate. On August 24, 1944, a settlement agreement was entered into between petitioner and all parties interested in the estate, which modified the third paragraph of the pernuptial agreement by providing that, in the event of petitioner's remarriage, instead of receiving a lump-sum payment of $10,000 she would continue to receive reduced annual payments of $2,500 per year during the rest of her life. Otherwise the prenuptial *231 agreement remained the same, and petitioner specifically ratified and confirmed the prenuptial agreement as so modified. Under the settlement agreement, petitioner was also given the furniture and a cash payment of $12,500 to pay her attorneys, and it was also provided: "The parties of the first and second parts agree that the payments to be made to the party of the third part under said antenuptial agreement as now ratified and confirmed by the party of the third part shall be made without deduction for any State or Federal inheritance or succession taxes and agrees to pay, indemnify, and protect said party of the third part from the payment of the same." By order dated September 1, 1944, the Circuit Court for Garrett County, Maryland, ratified and approved the settlement agreement and all the legal proceedings were to be dismissed "agreed, settled, and satisfied." Petitioner was represented by counsel in all of these proceedings. Thereafter, except for a period during which all funds owing by them to petitioner were levied upon by the Government to satisfy petitioner's tax liabilities for the years 1944 and 1946 to 1949, inclusive, the Trustees paid $5,000 annually to petitioner. *232 The Trustees filed fiduciary returns for the trust estate created under the will of Daniel E. Offutt, deceased, for each of its taxable years ending February 15, 1950 to 1953, inclusive. The return for the year ended February 15, 1950, reported net income of $5,919.09, of which $5,000 was reported distributed to Karin Offutt and $919.09 to Karin Offutt, Guardian for D. E. Offutt, Jr. The fiduciary returns for each of the trust's taxable years ending February 15, 1951 to 1953, inclusive reported as follows: [1]
Amount Distributed
Payable from Income
Year
Net Income
Karin
D. E. Offutt, Jr.
Karin
D. E. Offutt,Jr.
1951
$5,912.89
$5,000.00
$2,500.00
$3,941.93
$1,970.96
1952
6,079.99
5,000.00
2,500.00
4,053.33
2,026.66
1953
6,909.53
5,000.00
2,554.14
4,573.42
2,336.11
*233 On March 23, 1953, petitioner filed a petition in the Circuit Court for Garrett County, Maryland, against the Trustees under the will of Daniel E. Offutt, reciting the past actions of the Trustees in purportedly paying the $5,000 to her out of income of the estate as a result of which the Government was demanding income tax from her on the distributions, challenging the Trustees' right to pay her annuity out of income because it was claimed to be a charge against corpus, the trust having been established for the sole use and benefit of decedent's son, and asking the court to determine the rights and obligations of the Trustees and petitioner in the premises. The Circuit Court for Garrett County quite properly held that it had no right to pass on petitioner's obligations to pay Federal income tax on the payments received by her, but did find that the annual payments made to petitioner as provided under the ante-nuptial agreement, as amended, constituted "a charge against the entire trust estate and payable from principal if necessary." The court also found that the income of the trust estate constitutes a special trust fund for the support, maintenance, and benefit of petitioner's *234 son, and that petitioner is not a beneficiary of the trust estate or the income derived therefrom. That court, in its opinion which was made a part of this record, suggested that the annual payment to petitioner should be considered as an annuity purchased by her from the Trustees under the settlement agreement of 1944 for approximately $117,833, being one-third of the net estate to which she might have been entitled in a lump sum ($133,333), less the value of the furniture ($3,000), and the cash ($12,500) paid to her at that time. But, the opinion pointed out that it was not necessary for the court to say at that time that the Trustees could not use any unexpended balance in the income account, after payment of all proper charges against it, to apply on the $5,000 due petitioner because, if not so applied, such balance would be added to corpus in any event under the terms of the trust. So, the court decided only "that the $5,000 payment is in the nature of an annuity, chargeable against the whole trust estate, and payable from principal, at least if necessary in order to give her the full amount to which she is entitled." The order of the court directed that the trust auditor's report *235 for 1953 be restated in accordance with the conclusions reached in the opinion, but there is nothing in this record to show what the restated report contained. It appears that in the latter part of the year 1953, petitioner filed original income tax returns for each of the taxable years 1950 to 1952, inclusive. In said returns, she reported $5,000 as income from annuities or pensions, being the only income reported, but extended none of it as taxable income; and, in riders attached thereto, referred to the opinion and decree of the Circuit Court for Garrett County and stated, "Taxpayer believes that this is a return of capital (corpus) or an annuity and is therefore not taxable to her and should not be deductible by the Estate since it has been held by the court she is not a beneficiary of the Estate." The riders also stated that taxpayer was filing this return for the purpose of having a determination made, as quickly as possible, of her liability, if any, for income tax on the amounts received. Petitioner also filed amended returns for the years 1950 to 1952, inclusive, each being dated December 28, 1953, in which she reported no income but stated in riders attached: "I receive *236 annual payments from the trustees of the estate of Daniel E. Offutt in the amount of Five Thousand Dollars. It is my contention that these payments do not constitute taxable income under existing provisions of the Internal Revenue Code." Petitioner filed no income tax return for the year 1953. Petitioner has not shown that her failure to file a return for 1953 was due to reasonable cause and not due to willful neglect. Opinion This case is controlled by the decision of this Court in Alice M. Townsend, 12 T.C. 692, affd. 181 Fed. (2d) 502 (C.A. 6), and the annual payments of $5,000 made by the Trustees under the will of Daniel E. Offutt, deceased, to petitioner are taxable to petitioner under section 22(b)(3), Internal Revenue Code of 1939, as amended in 1942, [2] to the extent that such payments were actually paid out of income of the trust estate. *237 The facts in the Townsend case were very similar to the facts here. In that case, petitioner and her deceased husband had entered into a prenuptial agreement which provided that if petitioner survived Townsend she should receive from and the administrators of his estate should pay her stipulated monthly payments for a stated period following his death, such payments to be in full discharge of all claims she might otherwise have to any part of his estate. Townsend left her nothing under his will, but mentioned and confirmed the prenuptial agreement. His executors paid the widow the stipulated monthly payments out of income of the estate. This Court found that the payments in question were made because they were required by the terms of the prenuptial agreement and were required to be paid without regard to the availability of income and regardless of any provision in the will. Nothing that the Supreme Court, in Commissioner v. Wemyss, 324 U.S. 303; and Merrill v. Fahs, 324 U.S. 308, had held that amounts paid under prenuptial agreements were gifts, this Court held that since the gift was payable at intervals and the payments were made out of income, the payments *238 fell precisely within the provisions of section 22(b)(3) of the 1939 Code, as amended by section 111(a) of the Revenue Act of 1942, and were taxable to the widow. The Townsend case has been followed by this and other courts on many occasions and has not been overruled. See Raye E. Copeland, 12 T.C. 1020; Mary R. Milleg, 19 T.C. 395; Ruth B. Kaiser, 18 T.C. 808; Somers v. United States, an unreported case (N.D. Ohio, 1956), 51 A.F.T.R. 1982. The only material factual difference in this case and the Townsend case is that here petitioner attempted to repudiate the prenuptial agreement and renounce the will. However, she settled that proceeding by ratifying and confirming the prenuptial agreement, as modified, and the payments she received during the years here involved were the same as she was to receive under the original prenuptial agreement. While the Circuit Court for Garrett County, Maryland, in its opinion in the equity proceeding instituted by petitioner against the Trustees to have determined the nature of the payments to her, did say that it thought the annual payment should be considered as an annuity purchased by petitioner *239 from the Trustees for the value of her claim against the estate, the decree of the court held that the "annual payments of $5,000.00 to the petitioner, Karin Offutt, as provided for under the antenuptial agreement of December 27, 1928, as amended by the supplemental agreement between the Trustees and the petitioner, dated August 24, 1944, be, and they are hereby declared and decreed to be a charge against the entire trust estate and payable from principal if necessary." So we are of the opinion that the payments to petitioner here involved were paid under the prenuptial agreement, as modified, and that this case is directly controlled by the Townsend case. But even if the payments are considered to be made under the settlement agreement of 1944 rather than a prenuptial agreement, the principle would be the same and petitioner would still be taxable on the amounts paid to her out of income of the trust estate under section 22(b)(3). Petitioner might have been entitled to a lump-sum payment from the estate of one-third of the net value thereof as her widow's share under the law of Maryland. Had she received such a lump-sum payment, it would not have been taxable to her under section *240 22(b)(3), Lyeth v. Hoey, 305 U.S. 188, but instead, on the advice of counsel, she chose to take payments of $5,000 each year until her death or remarriage. If not considered to be paid under the prenuptial agreement, such payments would nevertheless be an inheritance, the payment, crediting, or distribution of which was to be made at intervals and, to the extent paid out of income of the estate or trust, it is considered to be an inheritance out of income from property and is therefore clearly taxable under the precise language of section 22(b)(3), as amended by the Revenue Act of 1942, and as clearly intended by Congress in enacting the amendment of 1942. Petitioner's reliance on Burnet v. Whitehouse, supra, is misplaced because the purpose of the 1942 amendment was to nullify the rule of that case insofar as it applied to payments made at intervals out of income. See Senate Finance Committee Report on the Revenue Bill of 1942, S. Rept. No. 1631, 77th Cong., 2d Sess., p. 70; Estate of W. R. Burt Trusts No. 27 and 27A, 12 T.C. 675. Petitioner's contention that the payments she received are simply her share of property saved by her husband and *241 her during their married life may sound logical to her as a layman, but has no merit in law. What evidence we have before us indicates that her husband had a sizable estate at the time they were married and she renounced all rights therein under the prenuptial agreement, and furthermore the only possible source of the payments to her are from property included in her husband's estate at the time of his death. Since his entire residuary estate was put into the trust for the benefit of the son, the trust estate is now the only source of her payments, and the state court has determined that her payments are a charge against the entire trust estate and "payable from principal" if necessary. Unfortunately for petitioner, from the evidence before us, the state court has not held that the Trustees cannot make these payments from, or partially from, income. As long as the state courts permit the Trustees to make these payments to petitioner out of income of the trust estate, they will be taxable to petitioner to the extent actually paid from income under the Federal law. It is no more the province of this Court to decide the source from which these payments should be made than it was the province *242 of the state court to decide whether the payments are taxable to petitioner. As heretofore noted, there is no evidence before us to indicate that any amounts other than the amounts charged as income to petitioner in the notice of deficiency were paid to and received by petitioner out of income of the trust estate in each of the years here involved, and respondent's determination must be sustained. Petitioner's contention that her husband intended that she take $5,000 annually without payment of tax cannot be determinative of the question here involved. It is not what he wanted her to have with which we are concerned. We must decide the tax effect of what was actually done. If what was done permits the Trustees to pay petitioner's annuity out of income of the estate, it is taxable to her under Federal tax law. As noted above, the Trustees' rights and duties in this respect are questions for the state court. Section 291(a)[3] requires imposition of the addition to tax therein provided for failure to file a return within the time prescribed by law "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Petitioner has failed to present any *243 direct evidence to show reasonable cause for failing to file a return for the year 1953. The fact that she filed delinquent returns for prior years, in order to raise the issue, just a short time before she should have filed a return for 1953 would indicate just the opposite. There is nothing in the record to indicate that she was advised that she did not have to file a return for 1953. As a matter of fact, the Circuit Court for Garrett County, Maryland, in its opinion mentioned above dated June 30, 1953, did say: "All I can decide here is that the Trustees are under no duty to her under the new settlement agreement to pay income taxes - either federal or State - on the $5,000 which she gets from them annually." This should have at least put petitioner on notice that she might be required to file returns and pay the tax. And shortly thereafter she did file returns for the years 1950-1952. *244 In the absence of evidence showing reasonable cause for failure to file a return for 1953, respondent's imposition of the addition to tax under section 291(a) for the year 1953 must also be sustained. Robert A. Henningsen, 26 T.C. 528, affd. 243 Fed. (2d) 954 (C.A. 4); Marcia P. Pierson, 21 T.C. 826. Respondent states in his brief that unless the Court should hold for petitioner in all respects, a computation under Rule 50 will be necessary. Decision will be entered under Rule 50. Footnotes
1. In the notice of deficiency, respondent charges petitioner with taxable income of $4,161.01 for the calendar year 1950, $3,941.93 for the year 1951, $4,053.33 for the year 1952, and $4,573.42 for the year 1953, the latter three amounts being the amounts reported on the fiduciary returns as having been distributed to Karin out of income of the trust for the fiscal years ending on February 15 of each of those years. There is nothing in the record to dispute these amounts, or to explain why only $4,161.01 was charged to petitioner for the year 1950 when the fiduciary return showed $5,000 paid from income, or to show whether petitioner actually received any different amounts during the calendar years 1950 through 1953, which were her tax years here involved. In the absence of any evidence to the contrary, we must accept respondent's determination of amounts distributed to petitioner out of income of the trust estate.↩
2. SEC. 22. GROSS INCOME. * * *
(b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
(3) Gifts, bequests, devises, and inheritances. - The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if, under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property;↩
3. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the agregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1).↩