Eva B. Hull v. Commissioner.
Hull v. Commissioner
Docket No. 88551.
United States Tax Court
T.C. Memo 1962-199; 1962 Tax Ct. Memo LEXIS 111; 21 T.C.M. (CCH) 1076; T.C.M. (RIA) 62199; 17 Oil & Gas Rep. 99; August 17, 1962
*111 Held, that petitioner did not make a taxable gift to Hull Enterprises, a corporation, when on January 3, 1955, she assigned a one-half interest in an oil lease to the corporation in consideration of the corporation's agreeing to pay her an annuity of $15,000 annually as long as she lived. Ronald M. Mankoff, Esq., Fidelity Union Tower, Dallas, Tex., for the petitioner. Harold D. Rogers, Esq., for the respondent. *112 BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in gift tax against petitioner for the year 1955 of $20,694.11 and an addition to tax under section 6651(a) of the Internal Revenue Code of 1954 in the amount of $5,173.53. In the deficiency notice the Commissioner stated: Explanation of Adjustments to Taxable Gifts It is held that 49% of the excess of the value of properties transferred to Hull Enterprises Corporation over the consideration received by you in the transfer of the properties constitutes your total gifts in the year 1955. Since you failed to file a gift tax return for the year 1955, it is held that the total of your gifts in the year 1955 is $125,973.84. On January 3, 1955 you transferred mineral properties to Hull Enterprises Corporation valued at $471,321.79. On the date of the transfer you owned 51% of the corporation. The consideration recited was a per annum payment of $15,000.00 payable to you for life. You were 54 years of age on the date of the transfer; therefore, the factor of 13.4734 is applicable. Your account with the corporation was credited with a payment of $8,311.62 *113 for well equipment. Computation follows: Total value of 1/2 of 7/8 working in-
terest (See Exhibit A)
$425,710.00
Total value of 1/32 overriding roy-
alty
45,611.79
Total value of properties trans-
ferred to corporation
$471,321.79
Less: Consideration received by you: Payment for equip-
ment
$ 8,311.62
15,000 X 13.4734 X 1.0189
(monthly factor)
205,920.71
Total consideration received by
you
214,232.33
Excess transferred to corporation
$257,089.46
You own 51% of corporation; there-
fore, to that extent it was a trans-
fer between your entities, 51% of
$257,089.46
131,115.62 An exclusion of $3,000.00 is allowed as provided in Section 2503(b) of the Internal Revenue Code. Petitioner by appropriate assignments of error contests this determination by respondent. Findings of Fact The facts were all stipulated except three documents which were introduced into evidence as exhibits by petitioner. The stipulation of facts, together with the two exhibits attached thereto, is incorporated herein as a part of these Findings of Fact. Petitioner is an individual residing in Okmulgee, Oklahoma. Her husband was *114 J. J. Hull, Sr., and he died prior to the year 1954. He was engaged until his death in the oil business in a partnership known as McCulloch Drilling Company. From and after his death petitioner succeeded to his partnership interest and oil properties and carried on the oil business. On January 3, 1955, petitioner owned 51 percent of the outstanding stock in Hull Enterprises, a Texas corporation. The remaining 49 percent of Hull Enterprises stock was held in the following proportions: Name
Percent
Texas Bank & Trust Company
39.2
J. J. Hull, Jr.
4.9
Lois Irene Payne
4.9
J. J. Hull, Jr., is petitioner's son residing in Okmulgee, Oklahoma. Lois Irene Payne is petitioner's married daughter residing in Pecos, Texas. The Texas Bank & Trust Company is in Dallas, Texas, and held its stock in Hull Enterprises as trustee for J. J. Hull, Jr., Lois Irene Payne, and any children of either or both of them. By contract dated January 3, 1955, petitioner agreed to transfer to Hull Enterprises her undivided one-half interest in and to the working interest of an oil and gas lease in Nolan County, Texas, in consideration for the agreement by Hull Enterprises to pay petitioner *115 $15,000 a year for as long as she lived provided Hull Enterprises shall earn net income after taxes and after deductions for depletion equal to $20,000 per year or more. By a recorded assignment dated January 3, 1955, petitioner transferred, assigned, and delivered to Hull Enterprises all of her interest in the McElmurray oil and gas lease located in Nolan County, Texas. This assignment reads in part as follows: WHEREAS, an undivided one-half interest in the said lease and all rights thereunder or incident thereto are now owned by Eva B. Hull. Now, Therefore, for and in consideration of One Dollar (and other good and valuable considerations), the receipt of which is hereby acknowledged, the undersigned, the present owner of the said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all rights, title and interest of the original lessee and present owner in and to said lease and rights thereunder in so far as it covers her undivided one-half (1/2) interest in and to A 7/8ths W.I. in all of NE/4 (save and except NW/4 of NE/4) of Sec. 36, Block 20, T & P. Ry. Co. Survey, Nolan County, Texas, as fully set out in assignment *116 dated Feb. 14, 1949 from A. G. Hill to J. J. Hull and Ocie McCulloch composing the partnership of McCulloch Drilling Company, recorded in Vol. 118, page 190 of the records of Deeds, Nolan County, Texas; also as shown by assignment dated July 17, 1951, from McCulloch Drilling Company to Iowa Payne Oil Company, in which assignment McCulloch Drilling Company assigns the NW/4 of the NE/4 of said Section 36, reserving 1/16 of 7/8 overriding royalty interest thereon, together with all personal property used or obtained in connection therewith to HULL ENTERPRISES and its successors and assigns. The fair market value of one-half of the seven-eighths working interest in the McElmurray lease and equipment located thereon on January 3, 1955, was $425,710, not including the one thirty-second overriding royalty. The present value on January 3, 1955, of the deferred payment contract described above, payable by Hull Enterprises to petitioner, was $205,920.71. It has been stipulated that: prior to January 3, 1955, petitioner derived all of her income from her oil business; at all times prior to the issuance of the statutory notice of deficiency petitioner believed that she had made a bona fide *117 sale of the McElmurray lease for full value to Hull Enterprises; petitioner's purpose in assigning the McElmurray lease to Hull Enterprises was to divest herself of the management problems attendant upon the property's ownership; and in each of the years 1955 through 1961, Hull Enterprises paid petitioner $15,000 on its deferred contract obligation, which amounts were reported by petitioner on her income tax returns. Exhibit 3 introduced in evidence by petitioner is an assignment of oil and gas lease signed by Ocie McCulloch and Eva Beatrice Hull to L. C. Johnston and reads in part as follows: Now, Therefore, for and in consideration of One Dollar (and other good and valuable consideration), the receipt of which is hereby acknowledged, the undersigned, the present owner of the said lease and all rights thereunder or incident thereto, do hereby bargain, sell, transfer, assign and convey a one-half (1/2) rights, title and interest in the original lessee and present owners in and to said lease and rights thereunder in so far as it covers the the northeast one-quarter (NE 1/4) of Section 36, Block 20, T & P Railway Company Survey in Nolan County, Texas, SAVE AND EXCEPT the northwest *118 one-quarter thereof heretofore assigned to the Iowa-Payne Oil Company, together with all personal property used or obtained in connection therewith to L. C. Johnston and his heirs, successors and assigns. Opinion BLACK, Judge: Respondent concedes that his determination of an addition to tax under section 6651(a) of the 1954 Code in the amount of $5,173.53 was in error. We shall therefore devote no discussion to that part of his determination. Petitioner states the issues in her brief as follows: 1. Whether Petitioner's sale of her share of a mineral interest, on January 3, 1955, was for full and adequate consideration. 2. Whether Petitioner's sale of her interest in mineral properties, even if it had been for less than full value, was a genuine business transaction, and therefore, not a taxable gift. It is respondent's contention that petitioner did make a taxable gift amounting to $122,973.84 by the transfer in question. In his deficiency notice the Commissioner gives an explanation of how he arrived at the above stated amount of $122,973.84 in the determination of the deficiency. It is petitioner's argument on her first point that although in her transfer of her interest *119 in the oil lease in question to Hull Enterprises on January 3, 1955, she stated that she was conveying a one-half interest therein, she was mistaken as to the interest assigned and she was the owner of only a one-fourth interest in the lease at the time of transfer. This was so, she contends, because she had on December 3, 1952, conveyed a one-fourth interest in this same lease to L. C. Johnston. Therefore, she says in her brief, she was only left with a one-fourth interest in the lease and she only owned that much interest in the lease at the time she undertook to convey one-half interest in it to Hull Enterprises on January 3, 1955. Petitioner contends that the consideration which she received from Hull Enterprises for the transfer of her interest in the lease was approximately equal to the fair market value of one-fourth of the oil lease which she really conveyed to Hull Enterprises on January 3, 1955. Petitioner further argues that it is fundamental that an instrument of conveyance will pass only that interest or title which a grantor may have in the property purported to be conveyed and that a grantor who has parted with a portion of the interest in a specific property, as petitioner *120 contends she did when on December 3, 1952, she conveyed one-fourth interest in the property to L. C. Johnston, has only the power thereafter to assign what he does own. Obviously, petitioner's argument would be true if the stipulated facts showed that on December 3, 1952, petitioner conveyed to L. C. Johnston a one-fourth interest in the lease in question and that on January 3, 1955, when she purported to convey a one-half interest in the lease, she only owned a one-fourth interest therein. But the stipulation does not read that way. Respondent counters the contention made by petitioner in the above respect by saying that during the period between December 3, 1952, when petitioner conveyed a one-fourth interest in the lease to L. C. Johnston, and January 3, 1955, when she purported to convey a one-half interest in the same lease to Hull Enterprises, any number of events could have happened which would have reversted title in petitioner to the one-fourth interest she had theretofore conveyed to Johnston. Respondent argues that at least one of the following events could have happened: (1) The assignment to L. C. Johnston could have failed for lack of consideration and the interest *121 purportedly transferred in the assignment dated December 3, 1952 would have been conveyed back to the original assignors. (2) Petitioner could have reacquired the undivided one-fourth interest in the McElmurray Lease at any time between December 3, 1952 and January 3, 1955. * * *
L. C. Johnston did not testify at the hearing with respect to his ownership in the McElmurray lease. Also, petitioner did not testify at the hearing as to why she used the words "one-half interest" in the lease assignment of January 3, 1955, instead of "one-fourth interest" which she now claims was all that she owned at the time the January 3, 1955, assignment was made. In view of this somewhat confused state of the record, we prefer to take up and decide the second contention which petitioner makes in her brief and which is stated as follows: 2. Whether Petitioner's sale of her interest in mineral properties, even if it had been for less than full value, was a genuine business transaction, and therefore, not a taxable gift. It is obvious if that issue is decided in petitioner's favor, her first contention does not have to be considered. It has been stipulated as follows: 20. At all times *122 prior to the issuance of the statutory notice of deficiency in this case, petitioner believed that she had made a bona fide sale of the McElmurray Lease for full value to Hull Enterprises. 21. Petitioner's purpose in assigning the McElmurray Lease to Hull Enterprises was to divest herself of the management problems attendant upon the property's ownership. 22. Petitioner has sold other oil properties out of the holdings inherited from her late husband. It is also stipulated: 4. Prior to January 3, 1955, petitioner derived all of her income from her oil business. Section 25.2512-8 of the Gift Tax Regulations reads as follows: § 25.2512-8 Transfers for insufficient consideration. Transfers reached by the gift tax are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a *123 transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. * * * [Italics supplied.] It is our view, considering the stipulated facts which we have quoted above, that the transfer by petitioner to Hull Enterprises on January 3, 1955, comes within the provisions of the underscored part of the regulations which we have just quoted. The petitioner was in the oil business and the lease in question was one of the oil properties which she inherited from her deceased husband. When the assignment of January 3, 1955, was made she believed that thereby she had made a bona fide sale of the McElmurray lease for full value to Hull Enterprises. Her purpose in assigning this lease to Hull Enterprises was to divest herself of the management problems attendant upon the property's ownership. It seems to us that under these facts, all of which are stipulated, the transaction was "a sale, exchange, or other transfer of property made in the ordinary course of business" and was not a gift, even though it turns out that the lease had a greater fair market value than the parties thought *124 it had at the time the assignment was made. There, of course, can be no doubt that petitioner was in the oil business. Paragraph 3 of the stipulation reads as follows: 3. From and after J. J. Hull, Sr.'s death prior to 1954, petitioner succeeded to his partnership interest and oil properties and carried on the oil business. The question is, was the assignment which petitioner made of the oil lease here in question to Hull Enterprises made in the "ordinary course of business" within the meaning of the language of the regulations to which we have just above referred. We think it was. In the case of Estate of Monroe D. Anderson, 8 T.C. 706 (1947), we held that, even assuming the value of the stock transferred was in excess of the consideration, the transaction was made in the ordinary course of business and was not subject to the gift tax. In our opinion in that case we said (p. 720): The pertinent inquiry for gift tax purposes is whether the transaction is a genuine business transaction, as distinguished, for example, from the marital or family type of transaction involved in Wemyss and its companion case, Merrill v. Fahs, 324 U.S. 308. Surely it will *125 not be said that there may not be a genuine business transaction not directly connected with the taxpayer's trade or business or even though the taxpayer be not engaged in "carrying on any trade or business," within the scope of that term as limited by Higgins v. Commissioner, 312 U.S. 212. Bad bargains, sales for less than market, sales for less than adequate consideration in money or money's worth are made every day in the business world, for one reason or another; but no one would think for a moment that any gift is involved, even in the broadest possible sense of the term "gift." As we have already stated, we think the transaction between petitioner and Hull Enterprises on January 3, 1955, was a bona fide sale for a consideration which petitioner believed to represent full value, and was not a gift. We think the transaction falls within the Treasury regulations above quoted. On this issue, we hold for petitioner. In his brief respondent says that the facts in the instant case are identical to the facts presented in Heringer v. Commissioner, 235 F. 2d 149 (C.A. 9, 1956). We have examined that case and so far as we can see it has no application to the *126 instant case. The facts in that case were entirely different from those which we have here and we do not regard it as controlling. Decision will be entered for the petitioner.