T. Albert White and Clara B. White v. Commissioner.
White v. Commissioner
Docket No. 5278-68.
United States Tax Court
T.C. Memo 1971-13; 1971 Tax Ct. Memo LEXIS 320; 30 T.C.M. (CCH) 64; T.C.M. (RIA) 71013; January 19, 1971, Filed Charles Odell White, for the petitioners. Robert H. Feldman, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $247.91 in petitioners' 1965 income tax. The only issue for decision is whether petitioners are entitled to a deduction for a wholly worthless bad debt under section 166(a), I.R.C. 1954. Findings of Fact The parties *321 have stipulated certain facts which are incorporated herein by this reference. Petitioners, T. Albert and Clara B. White, are husband and wife. They filed a joint Federal income tax return for the calendar 65 year 1965 with the district director of internal revenue at Los Angeles, California, and resided in Colton, California, when the petition in this case was filed. Petitioners' son, Harold E. White ("Harold"), entered the United States Navy on May 23, 1954. At that time Harold was 19 years old. During 1961, Harold was stationed at or near Mountain View, California, where he, his wife, Gayle, and their three children resided. As the result of a number of finacial pressures, generally created by personal living expenses, Harold was in need of funds during August of 1961. After unsuccessfully attempting to secure a loan from a financial institution, he sought a loan from his parents. Because of financial pressures of their own, petitioners could not afford to lend their son the funds he desired. Instead, on or about August 21, 1961, petitioners co-signed a note given by Harold and Gayle to the Bank of America, Colton Branch, Colton, California (the "Bank of America" or the *322 "Bank") in return for a loan from the Bank to Harold and Gayle in the amount of $445. In September of 1961, Harold sustained a back injury as the result of an automobile accident. The injury required hospitalization, and as the result of the injury, Harold was frequently hospitalized thereafter. Harold and Gayle subsequently made no payments on their note to the Bank of America and defaulted on their obligation. The Bank consequently charged the amount of the loan to petitioners' account at the Bank on February 20, 1963. During 1962 and 1963, and specifically on March 18, 1964, Harold and Gayle purchased household furniture and furnishings from McMahon's Furniture Store in Colton, California (the "furniture store"). The purchases were made on the basis of a loan or loans from the furniture store, for which petitioners co-signed. Petitioners subsequently paid $599.60 on the balance due, through November 20, 1965. In 1964 Harold was transferred by the Navy to a station in the Washington, D.C., area. During 1964 the Bank of America made two additional loans to Harold and Gayle, in the amounts of $67.06 and $938.40. Again petitioners co-signed the notes given in return for the loans. *323 After Harold and Gayle defaulted on the $67.06 loan, petitioners were required to pay the full amount of the loan to the Bank on February 3, 1965. Harold and Gayle also defaulted on their note for $938.40, and petitioners were required to pay the balance of $439.10. Petitioners made the last payment on that amount on July 23, 1965. After making payments on the notes in issue, petitioners expected that their son would repay them. And Harold considered himself obliged to do so. Petitioners did not seek or obtain security for the purported debt. However, they frequently asked Harold to repay them as soon as he could. Harold served as a court reporter during most, if not all, of his years in the Navy. Between 1962 and 1965, his salary remained at approximately the same level of $350 per month. However, when petitioners made payments on at least some of the notes here in issue, they anticipated that Harold would soon be promoted and also that he would eventually be able to secure Navy housing for himself and his family. Petitioners expected that the resulting increase in Harold's wages and reduction in his housing expenses would enable him to repay them. However, Harold never obtained *324 either the anticipated promotion or Navy housing. In fact, as the result of the growth of Harold's family and the high housing costs which he incurred after his transfer to the Washington, D.C., area, Harold's living expenses grew more rapidly than had been expected. In April of 1965 Harold suffered a nervous breakdown, and was hospitalized at the Bethesda Naval Hospital in Bethesda, Maryland, for approximately six months. During this period petitioner wrote to Harold several times, asking for repayment of the funds which he had paid to the Bank of America and the furniture store. In June 1965, Harold executed a note promising to pay to his father on August 1, 1965, the principal sum of $1,596.47, plus interest at the rate of six percent per annum, computed from June 9, 1965. That amount was never paid. Harold was released from the Hospital in October of 1965 and was assigned by the Navy to Philadelphia. After two weeks in Philadelphia, Harold had a second nervous breakdown and was hospitalized in Bethesda for two weeks. In late 1965, on the advice of a doctor, Harold applied for a discharge from the Navy. While waiting to be discharged, Harold was again stationed in Philadelphia, *325 but was unable to work as a court reporter due to his current psychological state. Harold was awarded an honorable discharge in February of 1966. The discharge was awarded on the grounds 66 of financial hardship, since Harold, who then had a family of a wife and four children, was still earning only $350 per month in the Navy. Since the time of his discharge Harold has not received a pension or other compensation from the Navy. Harold returned to California in 1966. Subsequently, his wife, Gayle, gave birth to a fifth child. After his return to California, Harold held approximately 12 jobs of generally undisclosed descriptions and durations. He was employed as a salesman by one enterprise for three years. During this period his annual earnings reached a maximum of $7,000 to $8,000. However, at the time of the trial herein Harold was unemployed and physically unable to perform ordinary sales functions for any length of time as the result of an arthritic condition which had developed during his service in the Navy. In addition, at the time of the trial herein, Harold was receiving welfare benefits from the State of California and was attending Riverside University in order to develop *326 his skills as a court reporter. Petitioners did not attempt to collect any of the amounts in issue through a lawsuit. However, such an attempt would have been unsuccessful in any event. Nevertheless, Harold recognizes his obligation to repay these amounts and still intends to do so at some future time. His wife has worked from time to time as a bank teller. During 1966 and 1967 petitioners provided Harold and Gayle with financial assistance in connection with additional payments on the furniture which had been purchased from McMahon's furniture store and in connection with transportation and storage fees which Harold was required to pay in order to have the furniture moved back to California after his discharge from the Navy. The foregoing payments are not in issue here, and petitioners have not sought to characterize them as loans. On their joint Federal income tax return for 1965, petitioners claimed a deduction for uncollectible bad debts in the amount of $1,545.82. The examining officer allowed a deduction of $241.04 and disallowed the balance of $1,304.78. The foregoing disallowance alone resulted in the deficiency of $247.91 determined by the Commissioner. Petitioners now *327 claim a deduction of $1,550.76 for worthless bad debts. In addition, by an amended answer, the Commissioner has disallowed the previously allowed deduction of $241.04 and increased the deficiency to $293.71. Opinion RAUM, Judge: Petitioners contend that the sums which they advanced on behalf of Harold constituted loans to him and that Harold's debt to them became worthless in 1965. Although petitioners claimed a deduction of $1,545.82 on their 1965 return, they now concede that the alleged debts are nonbusiness in nature and are consequently subject to the $1,000 limitation governing short-term capital losses. See section 166(d)(1)(B), I.R.C. 1954. The Commissioner concedes that "as a matter of law, debts can arise from three-party transactions of the type involved herein, just as if the co-maker had advanced the money directly to the debtor." However, the Commissioner contends that petitioners' payments herein are gifts rather than loans and that the deduction must therefore be disallowed. In the alternative, he contends that even if the payments did create debts, the debts did not become worthless during 1965. We hold that petitioners have established the existence of bona fide *328 loans, but hold further that the evidence fails to establish the requisite worthlessness of the debts in 1965. 1. While transfers between close relatives are subject to close scrutiny, see e.g., Estate of Carr v. Van Anda, 12 T.C. 1158, 1162, affirmed 192 F. 2d 391 (C.A. 2), petitioners have satisfied us that their payments constituted bona fide loans to Harold. It would serve no useful purpose now to reiterate our findings of fact. We do note, however, that petitioners themselves were in difficult financial circumstances and that on at least one occasion they could not afford to lend or give Harold the funds he sought. We note also that all of the debts in issue stemmed from bona fide loans to Harold from unrelated third parties. Under such circumstances, we think that the Whites (father, mother, and son) regarded petitioners' payments to the creditors as simply shifting the locus of Harold's obligations and not their nature. 2. However, we cannot find on the evidence before us that the debts became worthless in 1965. Notwithstanding Harold's physical and psychological conditions, the record indicates that he had earning capacity, that he in fact had *329 annual earnings of as 67 much as $7,000 to $8,000 after 1965, that his wife had experience as a bank teller and could perhaps produce additional income for the family from time to time, and that Harold has in fact been undertaking to improve his skills as a court reporter with a view to obtaining employment in that capacity. He regards himself as still obligated in respect of the debts. Although there are other factors pushing in the opposite direction, we think that on balance of the evidence presented we must conclude that petitioners have failed to establish that the debts became worthless in 1965. Decision will be entered under Rule 50.