OPINION. ArundelIi, Judge: Respondent has denied a deduction claimed by the petitioner’s decedent in the year 1942 for a bad debt in the amount of $12,756.37, on the basis that the transaction from which it arose was intended to be a family transaction between husband and wife and not a bona fide debtor-creditor relationship. It is elementary that one of the essential prerequisites for a bad debt deduction is that the debt must have an existence in fact. Luke & Fleming, Inc., 1 B. T. A. 12; Emil Weitzner, 12 B. T. A. 724. We have stated that the existence of an obligation is the sine qua non of a debt. Emil Weitzner, supra. The giving of a note or other evidence of indebtedness which may be legally enforceable is not in itself conclusive of the existence of a bona fide debt. Hattie Wolff, 26 B. T. A. 622; George W. Griffiths, 25 B. T. A. 1292; C. B. Hayes, 17 B. T. A. 86. It must be clearly shown that it was the intention of the parties to create a debtor-creditor status. C. B. Hayes, supra; Shiman v. Commissioner, 60 Fed. (2d) 65; Montgomery v. United States, 23 Fed. Supp. 130; certiorari denied, 307 U. S. 632; E. J. Ellisberg, 9 T. C. 463. Intrafamily transactions are subject to rigid scrutiny, and transfers from husband to wife are presumed to be gifts. However, this presumption may be rebutted by an affirmative showing that there existed at the time of the transaction a real expectation of repayment and intent to enforce the collection of the indebtedness. Jacob Grossman, 9 B. T. A. 643; Elizabeth N. C. Hetherington, 20 B. T. A. 806; Helen E. Leatherbee, 34 B. T. A. 196; W. F. Young, Inc. v. Commissioner, 120 Fed. (2d) 159. In the instant case, the decedent advanced $25,700 to his wife, taking in exchange her demand promissory note in that amount, secured by 280 shares of the capital stock of the 1172 Park Avenue Corporation, which shares had been given by him to his wife 10 years before. In form, the transaction appears to have possessed every element necessary to establish a debtor-creditor relationship. Our inquiry, therefore, necessarily must be to the question of whether it was so intended and regarded by the parties. Decedent’s son testified that it was his father’s intention to maintain in the disposition of his property a balance between his wife and son. In 1925, decedent had given his son $15,200 for the purchase of a cooperative apartment and in 1928 he had given his wife a cooperative apartment, represented by the 280 shares of stock in the 1172 Park Avenue Corporation, which had been purchased by the decedent immediately prior to the gift at a cost of $35,000. The son furthér stated that decedent was willing “to lend his wife the money for a second home against the security of her first home, so that she could dispose of either home when she decided which she permanently wanted and hold the other free and clear, or if she did not do this by the time of her death, or by the time of his death, the matter would be adjusted in their respective estates.” Although this may have been the decedent’s purpose in causing his wife to execute the note in respect to the money advanced and pledging the stock in the cooperative apartment as security, such a purpose does not, in our opinion, necessarily mean that the parties intended or regarded the advancement as a bona fide debt. There can be no doubt that the two homes, one in New York and the other in Lenox, Massachusetts, although nominally owned by the wife, provided living accommodations for the mutual benefit of the decedent and his wife. The evidence discloses that the decedent occupied jointly with his wife the apartment at 1170 Park Avenue, which she had put up as security for the note, and the home purchased by her in Lenox, Massachusetts, until the death of his wife in February 1942. Thereafter, he continued to occupy the Lenox home until it was sold on September 12,1942, and the New York apartment until his death, although the wife’s proprietary lease on the apartment was canceled on October 1,1943. He paid all of the household expenses, taxes, and expenses of maintenance and repairs of both homes. At most, the security available to the decedent in the event of the wife’s default would have been the homes in which he, as well as the wife, resided. No mortgage or lien was given the decedent on the Lenox home, and the note provided that it was to be discharged in the event that the stock representing the New York apartment was sold. There is no evidence that decedent ever demanded or requested payment from his wife, and in the 3-year period during which the note was outstanding there was but one payment, of $300, made by the wife, that being on December 31, 1939. The note itself bore no interest. Moreover, it is agreed that decedent’s wife had had no gainful occupation after her marriage and apparently no source of income other than the dividends, if any, from 105 shares of Standard Oil of California. As neither the New York apartment nor the Lenox home were income-producing properties, it seems doubtful that decedent ever seriously considered that his wife would be able to pay off the note, and lends support to respondent’s suggestion that the transaction was actually testamentary in nature. We can not believe that under the facts presented the parties regarded these properties as subject to a bona fide debt owing the husband from the wife. Although the formalities of such a transaction may have been observed and the “debt” was adequately secured, if there was no real intention of making repayment or enforcing the obligation, these facts are of little significance. In our opinion, the intention of the parties, as evidenced by the facts shown herein, was not such as to give rise to a bona fide debt. The money advanced by decedent to his wife was more in the nature of a contingent gift, the note being designed more to direct the disposition of the decedent’s property in the event of his death than as evidence of a debtor-creditor relationship between him and his wife. Such a transaction does not give rise to a “debt” within the meaning of section 23 (k) of the Internal Revenue Code, and the respondent’s determination in this respect is sustained. Petitioner further argues that, as the adjustment which results in the deficiency herein was made in decedent’s 1942 tax return, the respondent’s assessment of the deficiency herein is barred by the fact that the deficiency notice was mailed more than three years after March 15,1943, the date decedent’s return for 1942 is deemed to have been filed. Petitioner contends that, regardless of the effect of the Current Tax Payment Act of 1943, the statute of limitations runs from the filing of the 1942 return and not from the date of filing of the 1943 return. This Court has on several occasions passed upon the precisé question, and in each case has held adversely to the position of the petitioner. Lawrence W. Carpenter, 10 T. C. 64; Fred B. Snite, 10 T. C. 523; William W. Todd, 10 T. C. 655. Decision will l>e entered under Rule 50.