ESTATE OF Sebe E. MUSGROVE, Deceased; Heidi Crane and David L. Paluska, Co-personal Representatives, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 93–185T.

United States Court of Federal Claims.

June 30, 1995.

Gerald W. Hunt, Hunt, Stanley & Hossler, Yuma, AZ, for plaintiff.

G. Robson Stewart, Tax Div., Dept. of Justice, Washington, DC, with whom were Mildred L. Seidman and Loretta C. Argrett, Asst. Attys. Gen., for defendant.

## OPINION

HORN, Judge.

This case comes before the court on cross-motions for summary judgment. Plaintiffs, Heidi Crane and David L. Paluska, are co-personal representatives of the estate of

Sebe E. Musgrove. Plaintiffs bring this action for the refund of federal estate taxes in the amount of $99,381.94, paid on the estate of Sebe E. Musgrove. Plaintiffs argue that a $251,540.00 transfer by the decedent, Sebe Musgrove, to his son, Stanley, less than a month before Sebe's death, in exchange for an interest free, unsecured demand note in the amount of $300,000.00, which by its terms was to be cancelled upon the death of the decedent, should not be included in the decedent's gross estate. Plaintiffs, therefore, contend that they are entitled to a tax refund in the amount of $99,381.94, as an alleged overpayment of estate taxes on the estate of Sebe Musgrove.

In its cross-motion for summary judgment, defendant alleges that the transfer between Sebe Musgrove and his son, Stanley Musgrove, amounted to a gratuitous, intrafamily loan, lacking full and adequate consideration. Defendant maintains that, pursuant to I.R.C. §§ 2033, 2035 and/or 2038, the $251,540.00 was included properly as part of the gross estate of Sebe Musgrove, and, therefore, that there was no overpayment of estate taxes. Neither party contests that jurisdiction is proper in this court.

### FACTS

Sebe Musgrove died at the age of eighty-four on January 2, 1981, due to angina, hypertension and arteriosclerosis. He had been seriously ill prior to his death. Sebe Musgrove had two children, Stanley Musgrove and Naomi Ruth Stevens. Sebe's daughter, Naomi, predeceased him, leaving her entire estate to her brother, Stanley Musgrove, who also served as the personal representative of his sister Naomi's estate. Stanley advised Sebe that Naomi's estate was liable for approximately $300,000.00 in estate taxes, and that it would be necessary to sell part of the real property from Naomi's estate to pay the taxes due because Stanley did not have the funds necessary for the payment. Sebe stated that he did not want the land sold, and that to avoid sale of the land he would transfer the necessary funds to Stanley to pay the estate taxes due on Naomi's estate.

On September 5, 1980, Sebe and Stanley discussed the upcoming payment of the estate taxes on Naomi's estate with Sebe's attorney, Thomas Thode. Sebe stated that he intended to go to his bank to transfer $300,000.00 into Stanley's name so that he could pay the taxes due on Naomi's estate. Sebe claimed that, absent a financial emergency, he did not believe he would ever need to make a demand on the debt, and that he desired the note to provide for forgiveness of the obligation at Sebe's death. Stanley indicated that he did not know when or if he could repay the money to Sebe.

On September 5, 1980, Stanley Musgrove signed a promissory note, prepared by Sebe's attorney, Thomas Thode, pursuant to Sebe's directions. The note was payable to Sebe Musgrove in the amount of $300,000.00. On its face, the note contained a clause stating that if there was no prior demand by Sebe, the note was to be forgiven upon Sebe's death. After Sebe approved the contents of the note, Stanley signed the note and Sebe retained the original.

Because the exact amount of the taxes due on Naomi's estate was unknown at the time the promissory note was drafted, Mr. Thode advised Sebe and Stanley that a new note should be prepared to reflect the exact amount transferred to Stanley after the tax amount due was determined. Mr. Thode sent a letter, dated September 11, 1980, to Sebe and Stanley Musgrove, reflecting the understandings regarding the transfer. Mr. Thode's primary concern was to ensure that gift taxes would not be owed by Sebe on the amount transferred.

On the same day that the demand note was executed, Sebe and Stanley went to the Arizona Bank to arrange for the transfer of funds. Sebe possessed two certificates of deposit at the Arizona Bank, one in the amount of $283,500.00, payable "to the Order of Sebe Musgrove ITF Stanley Musgrove" and the other in the amount of $25,598.87, "payable to Sebe Musgrove." Stanley was added as a joint tenant to the certificates of deposit. Sebe, Stanley and Mr. Thode agreed, however, that to avoid an interest penalty for prematurely cashing the certificates of deposit, they would transfer the

money from Sebe to Stanley by borrowing the money from the Arizona Bank, using the two certificates as security. On December 16, 1980, after the exact amount of taxes owed on Naomi's estate was determined, Sebe arranged for a line of credit at the Arizona Bank, secured by the two certificates of deposit. Sebe had two checks prepared, one in the amount of $225,511.00, payable to the Internal Revenue Service, and the other in the amount of $26,029.00, payable to the Arizona Department of Revenue. The checks were mailed from Sebe to Stanley in California so that he could pay the taxes on his sister Naomi's estate.

On December 29 or 30, 1980, Stanley and Sebe discussed over the telephone whether they should make further arrangements regarding the certificate of deposit in the amount of $25,598.87. This certificate was no longer required to secure the loan with the Arizona Bank, because the taxes had been less than anticipated. Sebe stated that they should leave the certificate of deposit alone. Prior to Sebe's death, neither Sebe nor Stanley took any further action on the line of credit or on the certificates of deposits, nor was there any mention or demand for repayment of the advanced funds. Sebe did not have the demand note redrafted because, according to the affidavit of Thomas Thode included in the record, Stanley was going to inherit all of Sebe's money.

Sebe Musgrove died on January 2, 1981. Subsequent to Sebe's death, Stanley Musgrove paid the balance of federal estate taxes due on the estate of Sebe Musgrove on January 17, 1989, and paid the State of Arizona estate taxes on January 18, 1989. The demand note was reported as part of decedent's gross estate on the estate tax return at a value of $251,540.00. No gift tax return was filed, and no gift tax was paid with respect to the transfer of $251,540.00 from Sebe to Stanley. The plaintiffs' claims for refund for federal estate taxes, allegedly paid in excess, were made on September 6, 1990 and January 14, 1991. In part, plaintiffs sought a refund of federal estate taxes for inclusion of the promissory note in Sebe's estate.

An action also was filed in Arizona Superior Court (No. 45512) against Stanley Musgrove in his several capacities by a Special Administratrix of the Estate of Sebe Musgrove to recover the $251,540.00 transferred from Sebe to Stanley. The Arizona Superior Court determined that the transfer of the $251,540.00 represented a loan to Stanley by Sebe that was forgiven upon Sebe's death, and which Stanley did not have to repay to Sebe's estate.

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R.Civ.P.) and is similar in language and effect.[1] Both rules provide that summary judgment "... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ Rule 56(c) of the Rules of the United States Court of Federal Claims provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States,* 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Ass'n. Plan Trust v. United States,* 20 Cl.Ct. 674, 679

1. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil procedure is relevant to interpreting the rules of this court, including Rule 56.

*See Jay v. Sec'y DHHS,* 998 F.2d 979, 982 (Fed. Cir.1993); *Imperial Van Lines Int'l Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

(1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "... the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd,* 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if under no scenario can the nonmoving party present the evidence to support its case, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

■ If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.,* 755 F.2d 158, 163 (Fed. Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assoc.,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assoc.,* 20 Cl.Ct. at 679.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

■ In the above-captioned case, both plaintiff and defendant have filed motions for summary judgment. The fact that both the parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776

(1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *Ishida v. United States*, 31 Fed.Cl. 280, 284 (1994). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Bataco Industries, Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391.

■ In the above-captioned case, the court finds that there are no genuine issues of material fact in dispute and that this case is ripe for summary disposition. The issue presented to the court is whether the $251,540.00 transferred by Sebe Musgrove to his son Stanley Musgrove, less than a month before his death, in exchange for an interest free, unsecured demand note in the amount of $300,000.00, which by its terms was to be cancelled upon the death of Sebe, should be included in Sebe's gross estate, pursuant to I.R.C. §§ 2033, 2035, and/or 2038. Defendant asserts that the $251,540.00 transferred by Sebe Musgrove to Stanley Musgrove should be included in the decedent's gross estate pursuant to I.R.C. § 2033 (property in which the decedent had an interest), I.R.C. § 2035 (adjustment for gifts made within 3 years of decedent's death), and/or I.R.C. § 2038 (revocable transfers). As evidence that the money transferred was included correctly in Sebe's estate at the time of his death, defendant argues that the transfer between Sebe and Stanley occurred less than three years prior to Sebe's death, was a gratuitous loan, lacking in full and adequate consideration, and that Sebe retained an interest in the unpaid amount of the loan at the time of his death. To the contrary, plaintiffs maintain that at the time of his death, Sebe Musgrove retained no interest in the monies at issue, but unequivocally had transferred $241,540.00 to Stanley with no strings attached.

■ In a tax refund case, there is a strong presumption of the correctness of the findings of the Commissioner of Internal Revenue. The taxpayer not only has the burden of rebutting that presumption, but also of establishing entitlement to a specific amount of a deduction claimed. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Danville Plywood Corp. v. United States*, 899 F.2d 3, 7–8 (Fed.Cir.1990); *L.W. Hardy Co. v. United States*, 1 Cl.Ct. 465, 470 (1982); *Young & Rubicam, Inc. v. United States*, 187 Ct.Cl. 635, 654–55, 410 F.2d 1233, 1244–45 (1969). In order to overcome the presumption of the regularity of the proceedings, the taxpayer has the burden of presenting "substantial evidence as to the wrongfulness of the Commissioner's determination." *KFOX, Inc. v. United States*, 206 Ct.Cl. 143, 151–52, 510 F.2d 1365, 1369 (1975) (citing *Comm'r v. Riss*, 374 F.2d 161 (8th Cir.1967)). The burden imposed on a plaintiff is both the burden of going forward and the burden of persuasion. A plaintiff first must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *Danville Plywood Corp.*, 899 F.2d at 7–8; *Transamerica Corp. v. United States*, 902 F.2d 1540, 1543 (Fed.Cir.1990). Even after satisfying the burden of going forward, a plaintiff must still carry the ultimate burden of proof. *Id.*

Because the monetary transfer at issue in this case occurred between a father and son, the court must view this intrafamily transaction with rigid and heightened scrutiny. *Estate of Flandreau v. Commissioner*, 994 F.2d 91, 93 (2nd. Cir.1993); *Rude v. Commissioner*, 48 T.C. 165, 172, 1967 WL 928 (1967); *Mercil v. Commissioner*, 24 T.C. 1150, 1153, 1955 WL 660 (1955); *Van Anda v. Commissioner*, 12 T.C. 1158, 1162, 1949 WL 301 (1949), *aff'd per curiam*, 192 F.2d 391 (2nd. Cir.1951); *see also Helvering v. Clifford*, 309 U.S. 331, 334–35, 60 S.Ct. 554, 556–57, 84 L.Ed. 788 (1940). Intrafamily transactions

are subjected to rigid scrutiny since "the family relationship often makes it possible for one to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control over the subject of the gift or the purposes for which the income from the property is used." *Commissioner v. Culbertson,* 337 U.S. 733, 746, 69 S.Ct. 1210, 1216, 93 L.Ed. 1659 (1949); *see also Estate of Flandreau v. Commissioner,* 994 F.2d at 93. An intrafamily transfer is "a circumstance which has always prompted special scrutiny by the courts precisely because the genuineness of the transaction cannot reasonably be inferred from any circumstantial assurances of business purpose." *Fehrs v. United States,* 223 Ct.Cl. 488, 499, 620 F.2d 255, 260 (1980).

■ Although the presumption in an intrafamily transfer is that the transfer between related parties is a gift, *Rude v. Commissioner,* 48 T.C. at 172, the presumption that an intrafamily transaction is gratuitous "may be rebutted by an affirmative showing that there existed at the time of the transaction a real expectation of repayment and intent to enforce the collection of the indebtedness." *Van Anda v. Commissioner,* 12 T.C. at 1162; *see also Estate of Flandreau v. Commissioner,* 994 F.2d at 93. In order to overcome the presumption that a transfer from a father to a son is gratuitous, the "proof offered to accomplish it must be certain, definite, reliable, and convincing, and leave no reasonable doubt as to the intention of the parties." *Mercil v. Commissioner,* 24 T.C. at 1153; *Estate of Raab v. Commissioner,* T.C. Memo 1985–52, 49 T.C.M. (CCH) 662, (P–H) para. 85,025, 1985 WL 14685. As stated in *Fehrs v. United States,* "[f]ull control over both ends of the transaction are inconsistent with any form of property transfer save gift." *Fehrs v. United States,* 620 F.2d at 260. Moreover, even though the "formalities of such a transaction may have been observed and the 'debt' was adequately secured, if there was no real intention of making repayment or enforcing the obligation, these facts are of little significance." *Van Anda v. Commissioner,* 12 T.C. at 1163. Therefore, if the intrafamily transaction has the form and appearance of possessing the elements necessary to establish a bona fide debtor-creditor

relationship, the court's inquiry shifts to "the question of whether it was so intended and regarded by the parties." *Id.* at 1162. Plaintiffs contend that one factor which demonstrates the validity of the transaction in this case is that the loan transaction was overseen by an attorney. The mere fact that an intrafamily transfer was drafted by an attorney, however, does not save the transfer from being a gratuitous transfer or qualify it as a bona fide sale for full and adequate consideration. Although having an attorney draft the promissory note may give an intrafamily transaction the aura of establishing a legitimate creditor-debtor relationship, the test remains whether or not there is a "real expectation of repayment and intent to enforce the collection of the indebtedness." *Id.*

The calculation of taxes due on the estate of a decedent is controlled by Chapter 11 of the Internal Revenue Code. When ascertaining the amount of an estate tax, "[t]he value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." I.R.C. § 2031. Further, unless an election regarding "Alternate Valuation" is made pursuant to I.R.C. § 2032, I.R.C. § 2033 provides that "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." *See also United States v. Grace Estate,* 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969); *United States v. O'Malley,* 383 U.S. 627, 630, 86 S.Ct. 1123, 1125, 16 L.Ed.2d 145 (1966); *Estate of Whitt v. Commissioner,* 751 F.2d 1548, 1556–57 (11th Cir.) *cert. denied,* 474 U.S. 1005, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985).

Fundamental to the discussion of which monies should be included in Sebe's estate for estate tax purposes pursuant to I.R.C. §§ 2033, 2035 and 2038, and at the heart of the transfer at issue in this case, is the question of whether the transfer between Sebe and Stanley was a valid transfer, for full and adequate consideration. Internal Revenue Code § 2043(a) sets forth the statutory standard for determining whether full

and adequate consideration was effected in a transfer, as follows:

§ 2043. Transfers for insufficient consideration

(a) IN GENERAL

If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

In *Commissioner v. Estate of Church*, the United States Supreme Court stated the following: [2]

... an estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor lives or dies.

*Commissioner v. Estate of Church*, 335 U.S. 632, 645–46, 69 S.Ct. 322, 329, 93 L.Ed. 288 (1949).

Moreover, the United States Supreme Court has rejected the proposition that the term consideration as used in the estate tax provisions is the same as understood in common law.

The meaning of the phrase which is found in section 811(c)(1), and in other sections of the Code, 'an adequate and full consideration in money or money's worth' has been considered frequently. It is to receive 'identical construction' for purposes of both the estate and gift tax, *Merrill v. Fahs*, 324 U.S. 308 [65 S.Ct. 655, 89 L.Ed. 963]. The words 'adequate and full consideration,' were, in the 1926 Revenue Act, substituted for the words 'fair consideration' in the earlier Revenue Acts 'in order to narrow the scope of tax exemptions' 'after courts had given 'fair consideration' an expansive construction.' *Merrill v. Fahs, supra.* Whatever doubt existed as to whether or not the term 'consideration' should be construed to have been intended by the Congress to mean that which in civil and common law provides contractual consideration has been put at rest by the Supreme Court in *Commissioner v. Wemyss*, 324 U.S. 303 [65 S.Ct. 652, 89 L.Ed. 958], which rejected the view that the term, as used in the estate and gift tax provisions is the same as common law consideration. This Court and other courts, and the Treasury in its estate and gift tax regulations, had taken the view that the phrase 'a bona fide sale for an adequate and full consideration in money or money's worth' means that there must be the kind of consideration which in an arm's length business transaction provides the transferor of property with the full value thereof, in exchange; and that if the consideration is not paid in money, property, or services, but is represented by some benefit, then the benefit must be of the *equivalent money value* in order to constitute the required 'adequate and full consideration.' [Citations omitted.] The Supreme Court approved that view in *Commissioner v. Wemyss, supra.* Accordingly, the exemption from tax is limited to those transfers of property where the transferor or donor has received benefit in full consideration in a genuine arm's length transaction; and the exemption is not to be allowed in a case where there is only contracting con-

---

**2.** In *Commissioner v. Estate of Church*, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288, the government was interpreting sections of an earlier version of the Internal Revenue Code, specifically, I.R.C.

§ 811. The basic provisions of I.R.C. § 811 can now be found in the current version of I.R.C. § 2033.

sideration but not 'adequate and full consideration in money or money's worth.' [Citation omitted.]

*Goetchius v. Commissioner,* 17 T.C. 495, 502–03, 1951 WL 236 (1951); *see also Merrill v. Fahs,* 324 U.S. 308, 311–12, 65 S.Ct. 655, 656–57, 89 L.Ed. 963 (1945).

■ Consideration does not exist for a transaction, and a promissory note does not change the nature of the transaction, when there is an implied agreement among family members that the grantor will not make a demand on the obligation and that the notes were not intended to be enforced. *Maxwell v. Commissioner,* 3 F.3d 591 (2nd. Cir.1993); *Deal v. Commissioner,* 29 T.C. 730, 1958 WL 1114 (1958). Likewise, according to several Revenue Rulings issued by the I.R.S., if an individual makes a loan, and as part of a prearranged plan intends to forgive or not collect on the note, the note will not be considered valuable consideration and the property will be considered a gift at the time of the loan to the full extent of the loan. Rev.Rul. 81–286, 1981–2 C.B. 177 (1981); *see also* Rev.Rul. 77–299, 1977–2 C.B. 343 (1977). Moreover, "if there was no such prearranged plan, but the promisee later forgives the debt, the promisee will have made a gift at the time of forgiveness." Rev.Rul. 81–264, 1981–2 CB 185 (1981); *see also* Rev.Rul. 77–299, 1977–2 C.B. 343 (1977).

Relying on *Estate of Maxwell v. Commissioner,* 3 F.3d at 596 (2nd Cir.1993), plaintiffs maintain that an intent to forgive notes in the future should not disqualify such notes automatically from constituting valid consideration. The majority opinion in *Maxwell,* although acknowledging that there are a few Tax Court cases[3] which hold that an intent to forgive notes in the future does not *per se* disqualify such notes from constituting valid consideration, actually found that the conveyance in *Maxwell* "was not a bona fide sale for an adequate and full consideration in money or money's worth." *Id.* at 597. In fact, plaintiffs rely on the dissent in *Maxwell*

which stated that the "question is 'not whether the payee intended to collect the debt, but whether the payee intended to make a gift of the amount when it was advanced or to create an obligation portions of which could be forgiven from time to time as gifts in the future.'" *Id.* at 600 (Walker, dissenting) (citing *Story v. Commissioner,* 38 T.C. 936, 942, 1962 WL 1169 (1962)). Even under the standards articulated in the dissenting opinion in *Maxwell,* however, the transfer between Sebe and Stanley would not be considered as having been made for valid consideration. In his dissent, Judge Walker rejected cases such as *Deal v. Commissioner,* 29 T.C. 730, 1958 WL 1114 (1958), in which, according to the Judge, the Tax Court held that the transfer between a mother and her daughters was gratuitous because the notes executed by the daughters were not secured by the property at issue and in excess of one-half of the face value of the notes was forgiven within a week. According to Judge Walker, "by contrast, the Maxwells incurred an indebtedness secured by the property, and made regular payments on the notes for over two years." *Maxwell v. Commissioner,* 3 F.3d at 601. In the case at bar, the $300,000.00 demand note was unsecured and no regular payments were scheduled or made by Stanley.

Plaintiffs also rely upon *Wilson v. Commissioner,* 64 T.C.M. (CCH) 583, 1992 WL 201812 (1992). In *Wilson,* a 68 year old mother in good health transferred real estate to her three children in exchange for a self-cancelling installment note which required payment at the earlier of either 120 days after demand on the note or within 15 years after execution. The children's obligation under the note was to terminate if the mother died before the note was paid. The note was secured and also provided that each year the note was not paid an amount of 6% of the unpaid balance was added to the unpaid balance of the note. *Wilson,* however, also is distinguishable from the instant action, since in *Wilson* there was no dispute regarding

---

3. These cases were discredited in Rev.Rul. 77–299, 1977–2 C.B. 343 (1977) [sic], which stated, "The Service will not follow the decisions in *Selso R. Haywood* [sic], 42 T.C. 936 [1964 WL 1247] (1964), acq. in result 1965–1 C.B. 4, non acq., 1977–2 C.B. 2 nd, [sic] *J.W. Kelly* [Kelley]

[*v. Commissioner of Internal Revenue*], 63 T.C. 321 [1974 WL 2687] (1974), nonacq., 1977–2 C.B. [sic] that held that forgiveness of notes constituted a gift of a present interest, under circumstances similar to the present ruling."

whether the parties expected the note to be repaid. Instead, at issue was whether the fair market value of the note was sufficient consideration for the fair market value of the real estate. The *Wilson* court emphasized that "[t]he uncontradicted testimony in this case establishes that petitioner and her children intended that the children would sell the property and pay the note with the proceeds." *Id.* at 584. The children believed the property to be very marketable and believed that they would be able to sell it quickly in order to pay off the note. The property was listed for sale as soon as it was transferred to the children, even though by the time of trial in the *Wilson* case an offer to purchase the property had been received.

As indicated above, I.R.C. § 2033, provides that "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." When analyzing whether Sebe Musgrove retained an interest in the amount of the transfer at the time of his death pursuant to I.R.C. § 2033, both parties address *Buckwalter v. Commissioner*, 46 T.C. 805, 1966 WL 1210 (1966). In *Buckwalter v. Commissioner*, the decedent offered to make a low-interest loan to his son so that his son could pay off another higher interest loan. Father and son agreed that the loan would be kept secret in order to avoid paying state property tax and that the loan would be a matter of honor between the father and the son. In *Buckwalter*, a detailed and complete loan amortization schedule was placed in a sealed envelope in decedent's lockbox, identified in the son's handwriting as belonging to the son. If the father should die before full repayment of the loan, it was agreed that the son would be relieved completely from any further obligation. Decedent further stipulated that the loan was to be considered an annuity, at an interest rate of 2½% interest per annum. The son accepted the loan and made a number of payments according to a schedule prepared by his father.

The United States Tax Court, in the *Buckwalter* case, held that the transaction between the father and the son was a loan, not an annuity or gift, and that the son should be free from any further obligation on the loan at the time of his father's death. Since the son's obligation on the transaction expired upon the death of the father, the Tax Court held that the decedent had retained an interest in the unamortized amount of the loan. The Tax Court concluded that because the son was relieved of making any further payments on the obligation after his father death, the father "had an interest in the [unamortized portion of the] loan at the time of his death and that such interest was properly included in his gross estate pursuant to section 2033." *Id.* at 817.

Defendant argues that *Buckwalter* should be dispositive of the outcome of the instant action because Sebe lent the money to Stanley to pay another debt, Stanley's obligation to repay the loan to his father similarly expired on Sebe's death, Sebe maintained control of the debt by holding possession of the note until his death, and Sebe did not demand payment on the obligation during his lifetime. Plaintiffs, however, try to distinguish the facts presented by the Musgrove transaction from the facts in *Buckwalter*, arguing that Sebe and Stanley did not keep the transaction a secret and had the note drafted by an attorney, who included the forgiveness feature on the face of the note.

Despite plaintiffs' attempt to distinguish the *Buckwalter* decision, this court accepts defendant's interpretation of *Buckwalter* and believes that the *Buckwalter* decision is instructive on the interpretation of I.R.C. § 2033. Moreover, this court notes that the Musgrove transaction presents even less of an arms length transaction than the facts established in the *Buckwalter* case. In the instant case, Sebe did not draft a repayment schedule for Stanley to follow, no interest was established on the loan between Sebe and Stanley, Stanley did not make any payments to Sebe, Stanley stated he did not know if or when he could repay the loan, and Sebe was seriously ill at the time of the transaction.

Plaintiffs also argue that the case of *Estate of Moss v. Commissioner*, 74 T.C. 1239, 1980 WL 4487 (1980), is more instructive than *Buckwalter* to interpret I.R.C. § 2033 and helps to demonstrate that the amount of the loan balance in the instant case should not be

included in Sebe's estate. In *Moss*, the decedent sold stock and property to Moss Funeral Homes, a corporation of which he was president. In return, decedent was paid by the issuance of three promissory notes issued by the corporation, the third of which was also issued to cover the current indebtedness of the corporation to the decedent. All the notes contained a cancellation clause providing that the principal and interest due under the notes would be extinguished upon the decedent's death. The third note also contained a provision stating that if the decedent was survived by his widow, she should receive monthly payments to repay the indebtedness.

The court in *Moss* found that the transaction, which otherwise would have been viewed as gratuitous and, therefore, included in the decedent's estate, was exempted from the decedent's estate because full consideration for the transfer had been received for the bargain. The holding in *Moss* is in keeping with the language of I.R.C. §§ 2035–2038, which exempts otherwise includible testamentary transfers from the decedent's estate when there has been "a bona fide sale for an adequate and full consideration in money or money's worth."[4] I.R.C. § 2035(b)(1). Otherwise stated,

> [W]here the transferred property is replaced by other property of equal value received in exchange, there is no reason to impose an estate tax in respect of the transferred property, for it is reasonable to assume that the property acquired in exchange will find its way into the decedent's gross estate at his death unless consumed or otherwise disposed of in a non-testamentary transaction in much the same manner as would the transferred property itself had the transfer not taken place.

*Estate of Frothingham v. Commissioner,* 60 T.C. 211, 215, 1973 WL 2531 (1973).

The *Moss* case, however, also is distinguishable from the instant case, and from the

*Buckwalter* case, since in *Moss* the court made its finding, in large part, because the parties had stipulated that the sales of shares for the notes secured by the stock-pledge agreements were bona fide transactions for full and adequate consideration. The parties in *Moss* also had stipulated that there was no reason to believe that the decedent's life expectancy would have been shorter than the approximate ten years of life expectancy indicated by accepted mortality tables. Furthermore, the *Moss* transaction was not subjected to the heightened scrutiny surrounding an intrafamily transaction, and there was no other reason to suspect that the corporation would not repay the obligation in its entirety.

Plaintiffs' argument that I.R.C. § 2033 is inapplicable because Sebe did not maintain control over the $251,540.00 after it was given to Stanley is not persuasive. Sebe clearly maintained control over the funds transferred to Stanley. Moreover, the language in a letter from Thomas Thode to Sebe and Stanley stating that Stanley "will not use any of the monies for any other purpose without prior approval from Sebe," and that "[t]he transaction is intended to be a loan during the lifetime of Sebe Musgrove," further demonstrates that Sebe maintained control of the funds. Based upon all the facts presented in the case at bar, this court finds that the $251,540.00 was included properly in Sebe Musgrove's estate pursuant to I.R.C. § 2033.

Defendant alleges that the property at issue also is included properly in the estate pursuant to I.R.C. § 2035. According to I.R.C. § 2035, the estate shall include the value of property which has been the subject of a transfer by the decedent, by trust or otherwise, during a period of three years prior to death, subject only to specified exceptions, as follows:

**Adjustments for gifts made within 3 years of decedent's death**

**(a) Inclusion of gifts made by decedent**

Except as provided in subsection (b), the value of the gross estate shall include the

---

4.    (b) Exceptions
Subsection (a) shall not apply—
(1) to any bona fide sale for adequate and full consideration in money or money's worth, and....

I.R.C. § 2035. This provision also is discussed more fully below.

value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

**(b) Exceptions**

Subsection (a) shall not apply—

(1) to any bona fide sale for an adequate and full consideration in money or money's worth, and

(2) to any gift to a donee made during a calendar year if the decedent was not required by section 6019 (other than by reason of section 6019(2)) to file any gift tax return for such year with respect to gifts to such donee.

I.R.C. § 2035.

Congress enacted I.R.C. § 2035 to "reach substitutes for testamentary disposition, and thus to prevent evasions of the estate tax." *American Fletcher Nat. Bank and Trust Co. v. United States,* 222 Ct.Cl. 117, 611 F.2d 360, 364 (1979). "To facilitate effectuation of that intent, section 2035 included a presumption that a gift within 3 years of the donor's death was, 'unless shown to the contrary', made in contemplation of death, and thus includible in his gross estate." *Id.* at 364; *see also United States v. Wells,* 283 U.S. 102, 116–17, 51 S.Ct. 446, 451, 75 L.Ed. 867 (1931). The statute and case law are clear that I.R.C. § 2035 requires, except as provided in specific exceptions, that the fair market value of property transferred by a decedent within three years of death be included in the decedent's gross estate. *Estate of English v. Commissioner,* T.C. Memo 1985–549, 50 T.C.M. 1362, 54 (P–H) Memo T.C. para. 85,-549, 1985 WL 15172. Neither of the two exceptions in the statute are applicable in the instant case. Neither the exclusion regarding de minimis gifts of less than $3,000.00 included in section 2035(b)(2), nor, as is discussed throughout this opinion, the exception which allows monies transferred in "a bona fide sale for an adequate and full consideration in money or money's worth," be excluded from an estate, afford the instant plaintiffs relief.

Defendant further asserts that the amount of the transfer also should be included in decedent's gross estate pursuant to I.R.C.

§ 2038. That provision provides that property which is the subject of a transfer and in which the decedent has retained a significant interest and control will be included in the decedent's gross estate for purposes of calculating the decedent's estate tax, even if the decedent does not necessarily possess the property at the time of death.

I.R.C. § 2038 provides as follows:

**Revocable transfers**

**(a) In general**

The value of the gross estate shall include the value of all property.

**(1) Transfers after June 22, 1936**

To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3 year period ending on the date of the decedent's death.

. . . .

**(b) Date of existence of power**

For purposes of this section, the power to alter, amend, revoke, or terminate shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, revocation, or termination takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interest which would have been excluded from the power if the decedent had lived, and for such

purpose, if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death.

I.R.C. § 2038.

Similar to the argument regarding I.R.C. § 2033, plaintiffs also argue that I.R.C. § 2038 is inapplicable in the instant case because Sebe did not retain the power to revoke the transfer of $251,540.00 to his son, and the transfer was complete when the bank issued the two checks to Stanley totalling $251,540.00. Plaintiffs argue that Sebe only had power to demand payment of the note in the value of $300,000.00, given to him as purported consideration for the transfer of the $251,540.00.

Plaintiffs' argument with respect to the provisions of I.R.C. § 2038 fails for the same reason that plaintiffs' assertions regarding I.R.C. § 2033 are not persuasive. According to the records under review, Sebe Musgrove maintained control and an interest over the $251,540.00 transferred to Stanley. Whether a transfer comes within the purview of I.R.C. § 2038 depends on the substance, not the form, of the transaction. *Kasishke v. United States*, 426 F.2d 429, 434 (10th Cir.1970); *Estate of Shafer v. Commissioner*, 80 T.C. 1145, 1160–1161, 1983 WL 14846 (1983), *aff'd*, 749 F.2d 1216 (6th Cir.1984). Sebe retained an interest in the $251,540.00 transferred to Stanley because it was a loan, for which forgiveness upon his death was prearranged. Sebe maintained control of the debt of $251,540.00 by holding possession of the note until his death and by not making a demand on this obligation. Moreover, since Stanley could not use the money for purposes other than to pay off the taxes due on Naomi's estate, Sebe clearly maintained control over the use of that money. Therefore, as property gratuitously transferred by a decedent, it should be included in Sebe's gross estate.

The court notes that although plaintiffs argue that the transaction between Sebe and Stanley Musgrove was a bona fide arm's length loan transaction, undertaken in good faith for full and adequate consideration, even plaintiffs conceded at oral argument that:

> The test on this note, the test on this note is what's necessary to constitute a bona fide sale for adequate and full consideration in money or money's worth.
>
> The Treasury Department had a regulation that says real simply to meet this test, the transfer must have been made in good faith, and the price must be an adequate and full equivalent reducible to money value, as contrasted with a value based on love and consideration that has no monetary value.
>
> It is our position that the test had to be met at the time of the transfer....

Unfortunately for plaintiffs, the record taken as a whole demonstrates that Sebe Musgrove did not intend for Stanley to repay the loan absent a financial emergency and that he retained control over and an interest in the unpaid portion of the loan. Stanley signed an unsecured promissory note, in the amount of $300,000.00, payable to Sebe, without interest, which stated, on its face, that it was to be forgiven upon Sebe's death, and Sebe retained the original loan document. Sebe transferred $251,540.00 to Stanley Musgrove only to enable Stanley to pay the taxes on Naomi Stevens' (Sebe's daughter) estate. Stanley stated at the time of the loan transaction that he did not have the finances to pay for the estate taxes due on his sister's estate, and that he did not know when, or if, he would acquire such resources. Further, it is undisputed that when the transfer was entered into by Sebe and Stanley, the $300,000.00 amount represented what both individuals believed to be the amount necessary to satisfy the estate taxes on Naomi Stevens' estate. Although plaintiffs attempt to argue that the $48,460.00 difference between the $251,540.00 transferred to Stanley and the $300,000.00 face value of the promissory note constitutes bargained for consideration for the transfer, this argument is not supported by the record. It is clear that Sebe and Stanley expected to redraft the note to reflect the exact amount transferred once the estate taxes due on Naomi's estate were finally established. The parties also stipulated that Sebe Musgrove never had the note

redrafted to reflect the exact amount transferred because Sebe intended that Stanley would inherit all of his money when he died. That the loan at issue in the case at bar was not intended to be collected is further reinforced by the established facts that Sebe was seriously ill at the time of the transaction. According to the affidavit, signed by Stanley Musgrove several days after Sebe and Stanley agreed in August of 1980 that Sebe would advance the funds to Stanley and forgive the obligation on his death, Sebe "expressed concern that he might die, and suggested that Sebe and Stanley go to Tom Thode's office in order for Tom to prepare the necessary document" on the loan.

### CONCLUSION

After careful review of the record before this court and the applicable law, the court concludes that defendant has met its burden of proof on summary judgment. The record demonstrates that the transfer between Sebe Musgrove and Stanley Musgrove was a gratuitous loan between father and son, lacking in full and adequate consideration. The court finds that the $48,460.00 face amount difference between the promissory note in the amount of $300,000.00 and the actual amount of money transferred for payment of taxes on Naomi Stevens' estate ($251,540.00) was not intended either as consideration for the amount transferred or for the forgiveness feature on the face of the note. The transfer between Sebe and Stanley Musgrove lacked full and adequate consideration, for which reason the amount should be included in Sebe's gross estate for estate tax purposes, pursuant to I.R.C. §§ 2033, 2035 and 2038. Plaintiffs have failed to demonstrate that they are owed the amount of the refund claimed in their complaint. For the reasons discussed above, defendant's motion for summary judgment is, hereby, GRANTED. Plaintiffs' cross-motion for summary judgment, hereby, is DENIED. The Clerk of the Court is directed to dismiss plaintiffs' complaint and to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**