Commissioner proffered no evidence at trial to rebut this presumption. At this stage of the proceedings, the petitioners contend, we should be able to assess the difference between the value of the properties, which was the subject of testimony at trial, and the presumed fair market value of the SCIN. The difference would represent the amount of the bargain sale, if any, pursuant to § 2512.

But the petitioners did not advance this argument until their reply brief, and therefore the Commissioner was not afforded an opportunity to respond. Moreover, it is unclear from the record whether the Commissioner proffered evidence at the trial to rebut the presumption of the fair market value of the SCIN. *See Estate of Gibrauskas v. Comm'r*, 116 T.C. 142, 153 (2001) (stating that the fair-market-value presumption can be refuted by evidence that the note is worth less than its presumed value). We will therefore remand the action to the tax court for the purpose of resolving the Commissioner's alternative argument that the SCIN constituted a bargain sale that subjects the estate to gift taxation under § 2512.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the tax court and **REMAND** the case for further proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0055P (6th Cir.)
File Name:  03a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

ESTATE OF DUILIO
COSTANZA, deceased;
MICHAEL COSTANZA,
Executor,
        *Petitioners-Appellants,*

        *v.*

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellee.*

No. 01-2207

On Appeal from the United States Tax Court.
No. 16059-97—David Laro, Tax Court Judge.

Submitted:  February 4, 2003

Decided and Filed:  February 19, 2003

Before:  GILMAN and GIBBONS, Circuit Judges;
POLSTER, District Judge.

—————————————

*The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

### COUNSEL

———————————

**ON BRIEF:** Charles L. McKelvie, Rita A. Baird, DOLD, SPATH, McKELVIE & DeLUCA, P.C., Troy, Michigan, for Appellants. Teresa T. Milton, Richard Farber, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

———————————

### OPINION

———————————

RONALD LEE GILMAN, Circuit Judge. Duilio Costanza owned two parcels of real estate in Flint, Michigan, on one of which he operated a restaurant. In 1992, he decided to retire and move from Flint to his native Italy. After seeking advice from his attorney, he sold the properties and restaurant to his son, Michael Costanza, in exchange for a self-cancelling installment note (SCIN) that was fully secured by a mortgage on the properties. The SCIN provided, among other things, that no further payments would be due if Duilio died before the note was fully paid.

Duilio died approximately five months after the issuance of the SCIN, by which point Michael had paid off only a small portion of the note. Michael, as the executor of Duilio's estate, subsequently filed a federal estate tax return declaring that the estate had no liability for estate tax. The IRS issued a notice of deficiency based on its determination that the sale of the properties was not bona fide. After a trial, the tax court also concluded that the sale was not a bona fide transaction. Michael appeals this ruling. For the reasons set forth below, we **REVERSE** the judgment of the tax court and **REMAND** the case for further proceedings consistent with this opinion.

at trial that Duilio was expected to live somewhere between 5 and 13.9 years from the time that he signed the SCIN. His premature death due to complications from surgery was clearly not anticipated. In addition, the fact that the SCIN was fully secured by a mortgage on the properties further refutes any inference that the sale was not bona fide.

The petitioners have thus rebutted the presumption against the enforceability of an intrafamily SCIN by affirmatively showing that there existed at the time of the transaction a real expectation of repayment and intent to enforce the collection of the indebtedness. As such, we conclude that the tax court clearly erred in finding that the execution of the SCIN was not a bona fide transaction. *Cf. Estate of Musgrove v. United States*, 33 Fed. Cl. 657 (1995) (holding that the sale of property via a SCIN was not a bona fide transaction when the taxpayer declared that he was not likely to demand payment on the note).

### C.    Bargain sale

The parties disagree on how the case should proceed from here. According to the Commissioner, we should remand the action to the tax court to consider the IRS's alternative argument that the SCIN constituted a bargain sale that will increase the estate's adjusted taxable gifts. Pursuant to 26 U.S.C. § 2512, "[w]here property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year." The Commissioner thus urges us to remand the action to the tax court to determine the true value of the SCIN, which he contends is considerably less than the value of the properties transferred.

On the other hand, the petitioners maintain that there is no need to remand the action. They point out that, for estate tax purposes, "[t]he fair market value of notes . . . is presumed to be the amount of unpaid principal, plus interest accrued to the date of death," 26 C.F.R. § 20.2031-4, and that the

quarterly basis to limit the number of bank transactions." Although issuing three separate checks would not technically decrease the number of bank transactions, since the bank would need to process each check individually, this method of payment obviously served to ease the burden of having to deposit one check every month.

The quarterly payment plan also explains why Michael altered the dates of the checks. As Michael explained in his brief, he re-dated the checks "so as to clearly document the months for which Note payments had been made." The fact that he *obviously* wrote a different date on top of the original dates is further evidence that he was not trying to hide anything by the alterations. Moreover, pursuant to Duilio's oral instructions concerning the payment plan, it is not surprising that Michael did not make another payment on the note after tendering the three checks in March. The next quarterly payment would not have taken place until June, which was after Duilio had died.

Finally, the Commissioner argues that Michael and Duilio entered into the SCIN agreement because they presumed that Duilio would die prior to Michael fully satisfying the note. If they had thought Duilio would outlive the final payment due under the SCIN, the Commissioner reasons, there would have been no reason to have signed the SCIN, as opposed to an unconditional promissory note. This contention, however, basically questions the validity of any SCIN, an argument that the tax court has long since rejected. *Estate of Moss v. Comm'r*, 74 T.C. 1239, 1247 (1981) (upholding the validity of a SCIN). *See generally* Sheldon I. Banoff & Michael O. Hartz, *New Tax Court Case Expands Opportunities for Self-Cancelling Installment Notes*, 76 J. Tax'n 332 (1992) (discussing the permissibility of and reasons for executing a SCIN).

Moreover, despite Duilio's heart problems, there was no evidence that either Michael or Duilio presumed that Duilio would die within a few years of signing the SCIN, let alone within five months of the signing. Medical experts testified

## I.    BACKGROUND

Duilio Costanza was born in Italy in 1919. He immigrated to the United States and worked as a welder for General Motors, Inc. in Flint, Michigan until 1966. Upon retiring from GM, Duilio opened an Italian restaurant on property he owned in Flint. He later built a small office plaza on nearby property that he also owned. Both properties were appraised in 1991 at a value of $830,000.

In October of 1992, when he was 73 years old, Duilio wanted to return to Italy and sell his Flint properties. He accordingly sought the advice of his attorney, John Spath, who suggested that Duilio sell the restaurant and properties to Michael in exchange for a SCIN. In late December of 1992 or early January of 1993, Michael signed a SCIN in the amount of $830,000. A mortgage fully securing the obligation was recorded in February of 1993. The SCIN, which provided for payment in monthly installments over a period of 11 years, contained a cancellation-upon-death provision.

Duilio orally told Michael that he need not make a payment every month, instead authorizing Michael to remit the payments on a quarterly basis. Accordingly, on March 8, 1993, Michael made the note payments for January, February, and March by means of three back-dated checks. Michael tendered no further payments on the SCIN prior to Duilio's death on May 12, 1993.

Duilio unexpectedly died from a toxic reaction to bypass surgery performed the previous day. He had been suffering from heart disease during the final 15 years of his life. Nevertheless, Duilio's life expectancy at the time he executed the SCIN was between 5 and 13.9 years.

As the executor of his father's estate, Michael filed a federal estate tax return declaring that the estate had no estate tax liability. The estate tax return identified the SCIN as an estate asset, but claimed that the note had no value to the estate due to the cancellation-upon-death provision.

The Commissioner of Internal Revenue issued a notice of deficiency that proposed an increase in Duilio's gross estate because (1) the SCIN was not a bona fide transaction, or, in the alternative, (2) the transaction was a "bargain sale" that would increase the estate's adjusted taxable gifts. Following a trial, the tax court ruled that the sale was not a bona fide transaction. Consequently, the tax court held that the SCIN provided no consideration for the restaurant and properties and that their full value, minus the three payments deposited by Michael, was a taxable gift from Duilio to Michael. Michael appeals the judgment of the tax court, contending that the tax court erred in holding that the sale was not a bona fide transaction.

## II.   ANALYSIS

### A.   Standard of review

We review the tax court's findings of fact under the "clearly erroneous" standard. *Downs v. Comm'r*, 307 F.3d 423, 425 (6th Cir. 2002). "Factual findings are clearly erroneous if, based upon the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Zack v. Comm'r*, 291 F.3d 407, 412 (6th Cir. 2002) (internal quotation marks omitted).

### B.   Bona fide transaction

Section 2001(b) of the Internal Revenue Code provides that an estate tax must be paid on the value of a decedent's adjusted taxable gifts, subject to the exceptions contained therein. 26 U.S.C. § 2001(b) (2002). The tax court held that Duilio's estate was liable for tax under § 2001(b) because the transfer of the properties to Michael was a gift, not a bona fide transaction.

Since a SCIN leaves "no[] interest remaining in decedent at his death," it is, when bona fide, "not includible in his gross estate." *Estate of Moss v. Comm'r*, 74 T.C. 1239, 1247 (1981). But a SCIN signed by family members is presumed to be a gift and not a bona fide transaction. *Estate of*

*Labombarde v. Comm'r*, 58 T.C. 745, 755 (1972) ("Intrafamily transactions are subject to rigid scrutiny . . . . However, this presumption may be rebutted by an affirmative showing that there existed at the time of the transaction a real expectation of repayment and intent to enforce the collection of the indebtedness."). As such, "[t]he giving of a note or other evidence of indebtedness which may be legally enforceable is not in itself conclusive of the existence of a bona fide debt. It must be clearly shown that it was the intention of the parties to create a debtor-creditor status." *Estate of Van Anda v. Comm'r*, 12 T.C. 1158, 1162 (1949) (internal citations omitted), *aff'd*, 192 F.2d 391 (2d Cir. 1951) (per curiam).

Michael affirmatively testified that it was the Costanzas' intention for Michael to satisfy all of the payments due pursuant to the SCIN. Attorney Spath also testified that the Costanzas expected the note to be paid in full:

Q: Was Duilio Costanza willing to simply gift these properties to Michael?
A: No.
Q: Why not?
A: Because . . . [h]e wanted payment over time so he could retire in Italy.

The tax court, however, questioned the parties' sincerity, expressing concerns about the actual date the documents were signed, the date on which the three payments were made, and the fact that Michael altered the dates of the checks. But Michael satisfactorily explained all three circumstances. A brief delay in execution after the stated date of December 15, 1992 was simply due to the need of the attorney to pick a date upon which to base an amortization schedule where the documents were to be circulated by mail for signature. The fact that all of the documents were signed within several weeks thereafter is thus entirely inconsequential.

As for the delay in making the first three installments, Michael testified that his father wanted to be paid "on a