should be exempted under § 274(e)(7) as "items available to the public."

In regards to its "entertainment sold to customers" argument, Churchill Downs concedes that those invited to the Sport of Kings Gala and the other occasions did not pay for the privilege of attending these events. Nevertheless, Churchill Downs once again argues that these dinners and brunches were integral parts of an encompassing entertainment event – the races – which members of the public did in fact pay to attend. For the reasons already discussed above, this argument is unpersuasive.

As a final matter, it would seem that, even if these events were deemed not to constitute "entertainment" for purposes of §§ 274(a) and (n)(1)(B), § 274(n)(1)(A) would preclude full deduction of many of the expenses at issue here. *See* 26 U.S.C. § 274(n)(1)(A). That section, read in conjunction with the rest of § 274(n)(1), provides that "[t]he amount allowable as a deduction under this chapter for ... any expense for food or beverages ... shall not exceed 50 percent of the amount of such expense or item which would (but for this paragraph) be allowable as a deduction under this chapter." *Id.* This limitation does not appear to be contingent on a classification of the expenses as "entertainment." Given that the events at issue are mainly dinners, brunches, breakfasts, and receptions, it seems likely that a significant portion of the expenses for which Churchill Downs seeks deduction are for food and beverages. However, we need not resolve this issue, which the parties have not briefed, because we conclude that the expenses associated with these events already are subject to the 50% limitation as items "generally considered entertainment."

**AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0352P (6th Cir.)
File Name: 02a0352p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHURCHILL DOWNS, INCORPORATED and subsidiaries,
    *Petitioners-Appellants,*

        v.

COMMISSIONER OF INTERNAL REVENUE,
    *Respondent-Appellee.*

No. 01-1274

_____

On Appeal from the United States Tax Court.
No. 8140-99—David Laro, Tax Court Judge.

Argued: June 11, 2002

Decided and Filed: October 8, 2002

Before: BOGGS, SILER, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Byron E. Leet, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellants. Karen D. Utiger, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Byron E. Leet, C. Tyson Gorman,

WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellants.  Karen D. Utiger, Richard Farber, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

———————

**OPINION**

———————

SILER, Circuit Judge.    Petitioner Churchill Downs, Incorporated and its subsidiaries (together "Churchill Downs") appeal the United States Tax Court's judgment that they were entitled to deduct only 50% of certain expenses they incurred in 1994 and 1995 because the expenses qualified as "entertainment" for purposes of Internal Revenue Code ("I.R.C.") § 274(n)(1)(B).  For the reasons stated below, we **AFFIRM**.

**I.**

The facts of this case are not in dispute.  Churchill Downs owns and operates the Churchill Downs race track in Louisville, Kentucky, and three other race tracks.  Churchill Downs conducts horse races at these tracks, and earns revenues from wagering, admissions and seating charges, concession commissions, sponsorship revenues, licensing rights, and broadcast fees.  Although Churchill Downs does not compete directly with other race tracks due to differences in the timing of race events, it competes for patrons with other sports, entertainment, and gaming operations.

Churchill Downs' biggest race is the Kentucky Derby, held each year on the first Saturday in May.  Churchill Downs hosts the following events in connection with the race: (1) a "Sport of Kings" gala, (2) a brunch following the post position drawing for the race, (3) a week-long hospitality tent offering coffee, juice, and donuts to the press, and (4) the Kentucky Derby Winner's Party.  The Sport of Kings Gala includes a press reception/cocktail party, dinner, and

product samples, a practice Congress previously had characterized as making goods available to the general public.  The agency also concluded that the fact that a customer was required to engage in some amount of gaming activity in order to receive this benefit did not prevent it from being "available to the public" for purposes of § 274(e)(7).  However, the IRS concluded that "outside comps" – benefits offered to customers but produced by third parties and provided outside the taxpayer's premises – did not fall within this product sample rationale, and were not exempt under § 274(e)(7).  Here Churchill Downs argues that invitations to the Sport of Kings Gala and the other non-race events were akin to the "comps" provided to favored customers at a casino.

We reject this argument.  As an initial matter, written determinations like the TAM have no precedential value to parties other than the taxpayer they are issued to, and I.R.C. § 6110(k)(3) prohibits taxpayers from relying on them in proceedings before the agency.  *See* 26 U.S.C. § 6110(k)(3); *see also Liberty Nat'l Bank & Trust Co. v. United States*, 867 F.2d 302, 304-05 (6th Cir. 1989) (disallowing reliance on private letter rulings).  Furthermore, unlike the "comps" offered to casino patrons, the dinners and galas at issue here are not the products that members of the general public routinely purchase from Churchill Downs, namely, admission to horse races or wagers.  Indeed, Churchill Downs does not sell admission to these non-race dining events at all.  Nor does the provision of these benefits appear to have been based on the recipient's attendance at the races, or as an inducement for future attendance.  Rather, Churchill Downs acknowledges that the recipients were selectively chosen based on their ability to generate publicity for its races.  Finally, as the Commissioner points out, the food, drink, and entertainment appear to have been provided largely by third parties at offsite locations, and thus more closely resemble the "outside comping" example which the agency concluded fell outside of § 274(e)(7).  For all these reasons, the TAM does not support Churchill Downs' argument that these items

(7) **Items available to public.** – Expenses for goods, services, and facilities made available by the taxpayer to the general public.

(8) **Entertainment sold to customers.** – Expenses for goods or services (including the use of facilities) which are sold by the taxpayer in a bona fide transaction for an adequate and full consideration in money or money's worth.

26 U.S.C. § 274(e) (emphasis in original). Churchill Downs argues that the Gala expenses and other items at issue are exempt from § 274(a) pursuant to this section either because these events were available to the general public or because they qualify as entertainment sold to customers.

Churchill Downs does not dispute that these events were by invitation only, or that such invitations were offered only to a small number of individuals. However, it argues that amounts spent on these events meet the requirements of § 274(e)(7) because the expenditures were incurred to promote other events, the Kentucky Derby and Breeders' Cup races, which were open to the general public. We reject this argument. Regardless of whether Churchill Downs incurred these expenses in order to promote an upcoming event open to the public, the goods and services purchased with these expenditures were not "made available" to the general public, as § 274(e)(7) requires, but rather only to a few invited guests at pre- and post-race dining events and the Sport of Kings Gala.

Churchill Downs also relies on an Internal Revenue Service ("IRS") technical advice memorandum holding that food, beverages, lodging, and entertainment offered free by a casino to "high rollers" qualified as "items available to the public" for purposes of I.R.C. § 274(e)(7). *See* Tech. Advice Mem. 9641005, 1996 WL 584428 (July 27, 1996) ("TAM"). The IRS reasoned that all of the benefits provided were items the casino routinely offered to the paying public as part of its stock in trade. As such, the IRS concluded, this practice of "comping" favored customers was akin to providing free

entertainment. The Kentucky Derby items and amounts at issue in this case are:

| *Item* | *1994 Expenditure* | *1995 Expenditure* |
|---|---|---|
| *Sport of Kings Gala* | $114,375 | $85,571 |
| *Press Hospitality Tent* | -0- | $7,803 |
| *Derby Winner's Party* | $17,500 | -0- |
| **Total** | $131,875 | $93,374 |

In 1994, Churchill Downs also agreed to host another race, the Breeders' Cup, at the Churchill Downs racetrack. Its contract with Breeders' Cup Limited ("BCL") obligated it to host certain promotional events designed to enhance the significance of the the Breeders' Cup races as a national and international horse racing event. These events included: (1) a press reception cocktail party and dinner, (2) a brunch, and (3) a press breakfast. The Breeders' Cup items and amounts at issue in this case are:

| *Item* | *1994 Expenditure* |
|---|---|
| *Breeders' Cup Dinner* | $116,000 |
| *Breeders' Cup Brunch* | $21,885 |
| *Press Breakfast* | $7,500 |
| **Total** | $145,385 |

Finally, Churchill Downs hosted a number of miscellaneous dinners, receptions, cocktail parties and other events indirectly associated with one or both of these races, at an expense of $4,940 in 1994 and $21,619 in 1995.

Churchill Downs deducted the full amount of these Kentucky Derby and Breeders' Cup expenses on its 1994 and 1995 federal income tax returns as "ordinary and necessary business expenses" pursuant to I.R.C. § 162, 26 U.S.C. § 162(a). In a notice of tax deficiency, Respondent, the Commissioner of Internal Revenue ("Commissioner"), rejected this treatment and concluded that Churchill Downs was entitled to deduct only 50% of these expenses. The Tax Court agreed with the Commissioner, and Churchill Downs now appeals the Tax Court's rejection of its petition for a redetermination of the deficiency.

## II.

This court reviews the Tax Court's factual findings for clear error and its conclusions of law *de novo*. *See Friedman v. Comm'r*, 216 F.3d 537, 541 (6th Cir. 2000). In particular, this court reviews the Tax Court's interpretation of Internal Revenue Code provisions and related Treasury regulations *de novo*. *See Wolpaw v. Comm'r*, 47 F.3d 787, 790 (6th Cir. 1995).

I.R.C. § 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). I.R.C. § 274(a) disallows certain deductions otherwise permitted by § 162, and provides that:

No deduction otherwise allowable under this chapter shall be allowed for any item ... [w]ith respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or

S. Rep. No. 87-1881 (1962), 1962 WL 4862, at *3330. Churchill Downs argues that its entertainment products, the Kentucky Derby and the Breeders' Cup, necessarily include the Sport of Kings Gala and the other brunches, dinners and receptions at issue as integral parts of a unified entertainment experience.

We disagree. Unlike the hunter in the example above, who earns his money by hosting recreational hunting trips, Churchill Downs did not make any money from hosting the Sport of Kings Gala or the other events for which it seeks a deduction. Indeed, these events are easily separable from Churchill Downs' business because its primary customers, the gaming public, were not permitted to attend them, either by purchasing tickets or otherwise. Instead, Churchill Downs offered the tickets free of charge to a select few it describes as "members of the media, members of the horse industry, dignitaries, and celebrities" in order to raise public awareness of a later event (the races) which the public could attend and from which Churchill Downs made its money. Although Churchill Downs argues, as any business that depends on advertising may, that it made money as a result of these publicity events, this does not change their nature as something distinct from what was actually sold. The Commissioner puts it succinctly: "taxpayers were in the horse racing business, not the business of throwing parties." Accordingly, it is inappropriate to characterize these non-race events as Churchill Downs' "product." Thus, even if § 274(n)(1)'s limitation could be read not to apply where an entertainment event is itself the product sold by the taxpayer, there is no reason to apply such an exception here. We therefore reject Churchill Downs' "entertainment product" argument.

Finally, Churchill Downs offers two additional rationales for allowing a full deduction of these items. I.R.C. § 274(e) provides that:

[I.R.C. § 274(a)] shall not apply to –

...

Downs races and wagers on them. Instead, Churchill Downs invited selected dignitaries and members of the media to these private receptions, not with the expectation that they would later consume significant amounts of its product, but rather in the hopes that they would influence its primary customer base, the general public, to do so, either through the example of their attendance or through favorable reporting. As Churchill Downs explained, the attendance of the celebrities at these pre-race events was "essential" because "the presence of those individuals in Louisville for two or more days before the races gave rise to related publicity and media attention that helped sustain and advance the glamor and prestige of the races." In other words, the purpose of the galas and dinners was not to make Churchill Downs' product directly available to its customers or to provide them with specific information about it, but rather to create an aura of glamor in connection with the upcoming races and generally to arouse public interest in them. In this regard, the dinners, brunches, and receptions at issue most closely resemble the example given above of a fashion show held for the wives of appliance retailers, and are best characterized not as a product introduction event used to conduct the taxpayer's business, but as pure advertising or public relations expenses. Accordingly, we conclude that the Kentucky Derby and Breeders' Cup expenses at issue qualify as "entertainment" under § 1.274-2(b)(1)(ii)'s objective standard.

As an alternative argument, Churchill Downs contends that, under the objective test, an event generally considered entertainment should not be deemed "entertainment" for purposes of § 274 where the event itself is the product the taxpayer is selling. In support of this position, it relies on a statement in the legislative history of § 274(n)(1) that:

> The trade or business of the taxpayer will determine whether an activity is of the type generally considered to constitute entertainment ... . For example, with respect to a taxpayer who is a professional hunter, a hunting trip would not generally be considered a recreation-type activity.

otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business.

26 U.S.C. § 274(a). I.R.C. § 274(n) further limits deductions for entertainment expenses, providing that:

> The amount allowable as a deduction under this chapter for –
>
> (A) any expense for food or beverages, and
>
> (B) any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such activity,
>
> shall not exceed 50 percent of the amount of such expense or item which would (but for this paragraph) be allowable as a deduction under this chapter.

26 U.S.C. § 274(n)(1). The Commissioner does not dispute that all of the expenses at issue qualify as "ordinary and necessary" business expenses "directly related" to the "active conduct" of Churchill Downs' business, and thus that some deduction of these expenses is allowed. However, he argues that § 274(n)(1) applies to limit deduction of these expenses because they qualify as items associated with activity generally considered entertainment.

I.R.C. § 274(o) gives the Commissioner the power to promulgate "such regulations as he may deem necessary" to enforce § 274. 26 U.S.C. § 274(o). Here the Commissioner has promulgated a regulation in connection with § 274(n), which provides that:

> An objective test shall be used to determine whether an activity is of a type generally considered to constitute entertainment. Thus, if an activity is generally considered to be entertainment, it will constitute entertainment for purposes of this section and section

274(a) regardless of whether the expenditure can also be described otherwise, and even though the expenditure relates to the taxpayer alone. This objective test precludes arguments such as that *entertainment* means only entertainment of others or that an expenditure for entertainment should be characterized as an expenditure for advertising or public relations. However, in applying this test the taxpayer's trade or business shall be considered. Thus, although attending a theatrical performance would generally be considered entertainment, it would not be so considered in the case of a professional theater critic, attending in his professional capacity. Similarly, if a manufacturer of dresses conducts a fashion show to introduce his products to a group of store buyers, the show would not be generally considered to constitute entertainment. However, if an appliance distributor conducts a fashion show for the wives of his retailers, the fashion show would be generally considered to constitute entertainment.

26 C.F.R. § 1.274-2(b)(1)(ii) (emphasis in original). Each party relies on this language as support for its position. Churchill Downs argues that the Derby and Breeders' Cup expenses at issue should not be considered entertainment expenses because these pre- and post-race events "showcased" its "entertainment product." Specifically, it contends that the Sport of Kings Gala and the other invitation-only events generated publicity and media attention which introduced its races to the public in the same manner that a dress designer's fashion show introduces its product to clothing buyers. In response, the Commissioner relies on § 1.274-2(b)(1)(ii)'s statement that an item generally considered to be entertainment is subject to the 50% limitation even where it may be otherwise characterized as an advertising or public relations expense. The Commissioner argues that the brunches, dinners, galas, and parties at issue qualify on their face as items "generally considered entertainment" and, following § 1.274-2(b)(1)(ii), that they are not saved from this classification by the fact that these

amounts were spent to publicize Churchill Downs' racing events.

These arguments expose an inherent tension in § 1.274-2(b)(1)(ii). On the one hand, § 1.274-2(b)(1)(ii) states that an item generally considered to be entertainment is subject to the 50% limitation even if it may be described otherwise, in particular as advertising or public relations. At the same time, the regulation suggests that certain expenses generally considered entertainment but somehow instrumental to the conduct of a taxpayer's business do not qualify as "entertainment" for purposes of § 274(n). The regulation draws the line between pure publicity and entertainment events integral to the conduct of the taxpayer's business by providing the contrasting examples of a fashion show offered by a dress designer to store buyers (not entertainment) and a fashion show offered by an appliance manufacturer to the spouses of its buyers (entertainment). *See* 26 C.F.R. § 1.274-2(b)(1)(ii). In the first example, the event is attended by the taxpayer's primary customers, and the taxpayer's product is present at the event and is the focus of it. In contrast, the second example reflects a purely social event focused on something unrelated to the taxpayer's product, held to generate good will among selected third parties with the expectation that they will influence the taxpayer's primary customers into buying its product.

Here, as the Tax Court found, Churchill Downs is in the business of staging horse races and makes its money primarily from selling admission to the races and accepting wagers on them. However, no horse racing was conducted at the dinners and other events at issue. Nor did the events, held away from the track at rented facilities, provide attendees with an opportunity to learn more about the races – for example, the horses that would appear, the odds associated with each horse, the types of wagers available, track conditions, etc. – similar to the product information store buyers might acquire at a fashion show. Rather, Churchill Downs concedes that the events were planned simply as social occasions. Nor were the events open to the gaming public that attends Churchill